WATTS DETECTIVE AGENCY, INC.

*vs.*

INHABITANTS OF COUNTY OF SAGADAHOC.

Sagadahoc.      Opinion, February 19, 1941.

234

*McLean, Fogg & Southard,* for plaintiff.
*Pattangall, Goodspeed & Williamson,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J.   The issue in this case, which comes up on report, is whether the county of Sagadahoc is under legal obligation to pay the plaintiff detective agency for services and expenses of its operatives in connection with the investigation of an alleged crime. The county attorney arranged for the employment without consultation with the county commissioners and without their knowledge. After detectives had been at work for about three weeks, an account of the plaintiff of $2,092.00 was presented by the county attorney to the county commissioners. Action on the matter was deferred while the commissioners sought legal advice. They then declined to pay the bill, which had increased to $2,618.96, the amount in suit.

The contentions of the plaintiff are:

The county attorney is a county officer.

He is required to prosecute criminal cases and to diligently and faithfully inquire into all violation of law.

His duty implies the power to employ reasonable assistance.

Revised Statutes, Chap. 91, Sec. 89, specifically authorizing the attorney-general to employ detectives, does not deny or abrogate the authority of the county attorney to do so.

The county commissioners ratified the contract.

The defense contends:

The county attorney, though elected by the voters of the county, is attorney for the state within the county; he prosecutes for the state, receives his salary from the state, and is under the direction of the attorney-general.

His duties and powers are determined and circumscribed by the statutes.

The legislature has specifically granted to the attorney-general, by himself or through the several county attorneys, the right to employ detectives, and has provided for the payment of such services by the state upon presentation of bills properly avouched by the attorney-general.

The county commissioners have charge of the business and financial affairs of the county, must estimate its annual expenses and provide for their payment by taxation, and have the duty to pass upon contracts involving the expenditure of money.

The facts in the case show that a restaurant keeper was found

dead in his establishment, and his money was missing. Some of the money was found in the possession of a man who worked at the restaurant. The county attorney communicated with the attorney-general and was informed that he had unlimited authority to hire detectives. With the implications and inferences to be drawn from this statement, we are not concerned in the decision of this case. It is not claimed that the attorney-general, with a state fund at his disposal for the employment of detectives, assumed authority to charge the county of Sagadahoc with the expense, without the authorization of the county commissioners.

There is nothing in the record which would justify the contention of ratification of the employment by the county commissioners.

The issue is, therefore, resolved into the question: Can a county attorney, acting on his own authority, and without authorization or sanction of the county commissioners, incur liability upon the county to such extent as he may deem advisable, in the employment of detectives for criminal investigation?

The answer is to be determined by the applicable statutes of this state, and their reasonable interpretation.

Our court held in *Rounds, Petitioner* v. *Smart*, 71 Me., 380 at 384:

"The office of county attorney is the creature of the legislature. It exists only by virtue of the statute, which fixes its tenure, prescribes its duties and determines its compensation."

In *State* v. *Fisheries Co.*, 120 Me., 121, 113 A., 22, 23, it was held that the county attorney is not a common-law officer; that he cannot exercise common-law powers as the attorney-general is authorized to do; and

"The county attorney is the sole creature of the statute. His duties are prescribed by the statute, enlarged only by the additional duties incidental and necessary to carrying out those prescribed."

Revised Statutes, Chap. 93, Secs. 15-24, contains the principal provisions relating to county attorneys. Section 16 prescribes the duties in civil matters, and requires that:

"The county attorney in each county shall appear for the county, under the direction of the county commissioners, in all suits and other civil proceedings in which the county is a party or interested."

Section 17, having reference to duties in criminal matters, reads as follows:

"The county attorney shall attend all criminal terms held in his county, and act for the state in all cases in which the state or county is a party or interested, and unless he makes an order of dismissal as hereinafter provided, shall diligently and without delay prosecute to final judgment and sentence, all criminal cases before the superior court of his county, and in the absence of the attorney-general from a term in the county, shall perform his duties in state cases under directions from him, in the county, and he shall appear and act for the state with the attorney-general, in the law court, in all state cases coming into said court from his county;"

The general duties of the county commissioners are found in R. S., Chap. 92, Sec. 10, as follows:

"The county commissioners shall make the county estimates and cause the taxes to be assessed; examine, allow, and settle accounts of the receipts and expenditures of the moneys of the county; represent it; have the care of its property and management of its business; by an order recorded, appoint an agent to convey its real estate; lay out, alter, or discontinue ways, and perform all other duties required by law."

The foregoing section is a condensation of the original provision of R. S. 1841, Chap. 99, Sec. 3. Illustrative are the clauses:

"to make estimates to be laid before the legislature, of the sums, which may from time to time, be necessary to be assessed for defraying county charges, and to take the necessary and legal measures for apportioning and assessing the same."

This, in connection with the remaining provisions, serves to clarify the responsibility of county commissioners, and demon-

strates their duty to determine in advance, so far as practicable, the financial requirements, to provide the necessary funds and to control expenditures. Without some measure of such control, estimates and budgets would be a worthless formality and the taxpayers would be subject to such expenditures as every county officer might regard suitable for the department with which he was concerned.

In 15 C. J., Counties, Sec. 102, we find the general rule stated:

"Except as otherwise provided by law, a board of county commissioners or county supervisors ordinarily exercises the corporate powers of the county. It is in an enlarged sense the representative and guardian of the county, having the management and control of its property and financial interests, and having original and exclusive jurisdiction over all matters pertaining to county affairs."

See also *Cumberland* v. *Pennell*, 69 Me., 357.

The relation of the sheriff's department to investigation of criminal cases and enforcement of law has place for consideration in the determination of the question presented.

While in the earlier statutes there was lack of specification as to the duties of sheriffs in criminal cases, it was finally expressed by P. L. 1872, Chap. 62. The enactment was evidently deemed advisable with particular reference to the enforcement of the prohibitory liquor laws, but it had general application. It read as follows:

"Sect. 2. It shall be the duty of sheriffs and their deputies, diligently and faithfully to inquire into all violations of the laws of the state, within their respective counties, and to institute legal proceedings against violations or supposed violations of law, and particularly the laws against the illegal sale of intoxicating liquors, and the keeping of drinking houses and tippling shops, gambling houses or places, and houses of ill fame, either by promptly entering a complaint before a magistrate competent to examine or try the offense charged, and execute such warrants as may be issued on such complaints, or by furnishing the county attorney promptly and without delay, with the names of alleged offenders, and of the witnesses."

This law was amended in 1891, P. L., Chap. 132, Sec. 7, by inserting

in the first line after the words "Sheriffs and their deputies" the words "and county attorneys." The law now is embraced in R. S., Chap. 137, Sec. 28. It still retains the requirement that sheriffs "shall furnish the county attorney promptly and without delay, with the names of alleged offenders, and of the witnesses."

Further in the 1872 enactment was an additional provision as to the correlative duties of county attorneys, which is included in all subsequent revisions and is now found in R. S., Chap. 137, Sec. 31, as follows:

"County attorneys shall cause to be summoned promptly before the grand jury all witnesses whose names have been furnished them by any sheriff or his deputies, as provided in section twenty-eight, and shall faithfully direct inquiries before that body into violations of law, prosecute persons indicted, and secure the prompt sentence of convicts."

It thus appears that under the procedure adopted in this state, and under the statutes regulating the same, the sheriff's department was, originally and primarily, charged with the duty of criminal investigation.

The statutes with reference to expenditure of money by county attorneys appear to be restrictive and relate to specific matters. R. S., Chap. 93, Sec. 16, concerning his services in civil matters provides:

"For the services herein mentioned the county attorney shall receive no compensation other than the salary from the state, except actual expenses when performing said services, the same to be audited by the county commissioners and paid from the county treasury."

In the next section, 17, concerning criminal matters, it is provided:

"but no additional compensation shall accrue to the county attorney by the discharge of such duties."

Another example of control of expenditure through specific legislation is shown in the statute regulating clerk hire for various county officers, and fixing the amount of compensation. This is found

in R. S., Chap. 125, Sec. 46, and, as there appears, in but three counties of the state is clerk hire allowed for county attorneys.

It is urged that R. S., Chap. 148, Sec. 1, grants general authority to a county attorney for the expenditure of money, and that this is sufficient to cover the employment of investigators. The statute reads:

"The superior court shall allow bills of costs accruing therein, but all other costs and expenses in criminal cases shall be audited by the commissioners of the county where they accrued, including actual expenses incurred by county attorneys in the performance of their official duties, payment of which is hereby expressly provided."

In the light of all the general subject-matter legislation, this contention cannot be upheld, and the employment of detectives cannot be considered as within the scope of "actual expenses incurred by county attorneys."

The various enactments of the legislature relating to the offices of county attorney, sheriff, county commissioners and attorney-general, their respective powers, duties and responsibilities, and the restrictions imposed, are all material for consideration in order to arrive at a reasonable construction, for the intent of the legislature, thus disclosed, is the law. *Lunn* v. *Auburn*, 110 Me., 241, 85 A., 893.

"Such a construction must prevail as will form a consistent and harmonious whole." *Rackliff* v. *Greenbush*, 93 Me., 99, 44 A., 375, 376.

The duties of these officers are in great measure co-related. The interpretation contended for by the plaintiff takes from the prudential officers control of large expenditures, endows two distinct agencies with the right to incur expense for the same purpose, without mutual action, and results in conflict of authority and loss to taxpayers.

Interpretation of statutes which tends to coördination of the work of separate departments, each having duties to perform in the enforcement of law, is a compliance with the rule of reasonable construction, rather than one which leads to confusion.

The instant case illustrates such a situation. The four detectives

employed by the county attorney made reports to him. The sheriff's office had nothing to do with them. Men were used from that department in investigation work but not in coöperation with others. The attorney-general assigned a man from the state highway department to make some investigation. He apparently worked separately. The police department of the City of Bath had a man watching the restaurant. Nothing came of these unrelated efforts and there was no indictment.

In the field of investigation, it may well be found advisable, in the larger and more populous centers, and with the sanction of the county commissioners, that one or more experienced investigators should be attached to the sheriff's department, and that the county attorney, as the prosecuting law officer, should collaborate with that department by suggestions as to the conduct of the investigation, the evidence required and the methods to be employed. Such appears to be the intendment of the statutes in this state.

In cases of inquests by medical examiners in homicides, the county attorney or attorney-general is required to take part. The court is not called upon here to determine the extent of the authority of a county attorney to incur expense in that connection, as there is no record that any such proceeding was taken. The statutory provision relating thereto and referred to by counsel for the plaintiff as indicating implied powers of a county attorney appears in R. S., Chap. 151, Sec. 5. It may well be cited, however, as an additional instance of the legislative will to prescribe specific instructions under particular circumstances.

Decisions in other states are, of course, dependent on the particular statute of each jurisdiction, but as stated in 18 C. J., 1313,

"As a general rule, in the absence of a statute, a prosecuting attorney cannot bind the county by a contract or for expenses without authority from the county board."

Finally in the development of procedure for the investigation of crimes, the attorney-general was accorded the right to employ detectives at the expense of the state. This provision was first made in 1901. P. L., Chap. 162, Sec. 2. It now appears as R. S., Chap. 91, Sec. 89, and is as follows:

"The attorney-general may, by himself or through the several county attorneys or other officers of the state, employ such detectives or other persons, offer rewards or use other means that he may deem advisable, for the detection, arrest and apprehension of persons who commit crime in this state."

Appropriation of $1,500.00 for the purpose was originally fixed by the succeeding section. The appropriation was increased to $7,500.00 by P. L. 1917, Chap. 283; to $12,500.00 by P. L. 1919, Chap. 229. By P. L. 1929, Chap. 185, instead of a specific sum, it was provided that:

"Such sum as may be appropriated for said purpose may be expended under the direction of the attorney general."

and now by R. S., Chap. 91, Sec. 90, a blanket appropriation is authorized for purposes of the attorney-general's department, including the employment of detectives.

A considered purpose is thus disclosed to invest the office of attorney-general with the power and authority to employ detectives at the expense of the state, whenever in his judgment the occasion warrants. It is further made clear that upon his authorization county attorneys may avail themselves of such service, without expense to their counties. If the personnel of the sheriff's department is not sufficient to cope with a particular situation, the statute makes provision for proper investigation through the chief law officer of the state, who is himself charged with the assistance of and instructions and advice to county attorneys. R. S., Chap. 91, Secs. 86, 87.

The principles of law as to implied contract arising from the rendition of services or *quantum meruit*, are without application in dealing with municipalities or political divisions of the state. *Power Co.* v. *Van Buren*, 116 Me., 119, 100 A., 371; *Michaud* v. *St. Francis*, 127 Me., 255, 143 A., 56; *Buzzell* v. *Belfast*, 131 Me., 185, 160 A., 21; *Tractor Co.* v. *Anson*, 134 Me., 329, 186 A., 883.

Our conclusion is, therefore, that the plaintiff is not entitled to recover, and in accordance with the stipulation, the entry will be

*Judgment for defendant.*