70960. MATTHEWS et al. v. NEAL, GREENE & CLARK.
(338 SE2d 496)

BANKE, Chief Judge.

The appellee, an architectural firm composed of the architects Neal, Greene and Clark, sued the appellants, Jane and William Matthews, to recover for services allegedly rendered in preparing plans for an addition to a house owned by Mr. Matthews. The complaint was predicated both on breach of contract and quantum meruit and sought recovery of attorney fees in addition to actual damages. The

case was tried before a jury, which awarded the firm actual damages in the amount of $9,637.76 (the amount sought in quantum meruit), plus attorney fees in the amount of $3,000. The appellants filed this appeal from the denial of their motion for new trial or, in the alternative, judgment notwithstanding the verdict.

The evidence, construed most strongly in favor of the verdict, may be summarized as follows. Mr. and Mrs. Matthews were desirous of constructing an addition to an old farmhouse owned by Mr. Matthews, known as "Brickhouse Farm." Mr. Matthews was a banker by trade, and the house in question was evidently to be utilized by his family as a weekend retreat. Mr. Matthews telephoned Mr. Neal in 1975 or 1976 to obtain his assistance in preparing the plans, and Mrs. Matthews subsequently provided him with photographs to illustrate the type of interior space she had in mind. Based on these photographs, and on additional directions and recommendations received from Mrs. Matthews, the firm prepared preliminary plans, working plans, and a final plan for the addition.

The parties did not enter into a formal, written agreement with respect to the cost of the firm's services but did correspond on the subject. On September 25, 1979, Mr. Neal wrote Mrs. Matthews as follows: "Jane, we never discussed our fee relative to work at Brickhouse Farm. Our fee for the work we will be doing will be 10 percent of the cost. This is an all inclusive fee, including preparing bidding documents, receiving and letting bids and the supervision of the work when construction commences." By return mail, Mrs. Matthews expressed her agreement with this arrangement; however, neither she nor her husband ever specified any limit to the cost of the proposed addition, nor did Mr. Neal ever broach this subject with them. Neal did testify, though, that at some point he told Mrs. Matthews what she was asking for "was going to run into a great deal of money."

With respect to the meaning of the word "cost" as used in the letter of September 25, 1974, Mr. Neal testified that it was his understanding that "[i]t was to be construction cost estimates as set out in the standard form AIA [American Institute of Architecture] contracts." He added that "had the project gone forward it would be [actual] construction cost. If it had been abandoned . . . the estimated cost."

Although, according to Neal, Mrs. Matthews expressed satisfaction with the final plans at the time they were submitted to her, she became disenchanted when the only construction bid she and her husband were able to obtain proved to be $116,660, an amount far in excess of what they had contemplated spending. On July 10, 1982, after negotiating with the contractor who had submitted this bid in an attempt to trim some of the costs, she wrote to Mr. Neal as follows: "I would assume your fees will be based on the final construc-

tion ~~estimate and~~ costs [the words "estimate and" being stricken through as indicated]. . . . However, if the project has to be abandoned, I'm sure that we'll reach a satisfactory fee for your firm." Construction was never begun on the project; and the firm, which submitted a bill for $8,500 for its services, never received any payment whatsoever.

As proof of damages under the quantum meruit theory of recovery, the firm introduced evidence that it had expended 373 hours of professional time in preparing the plans and offered expert testimony that $25 an hour (or $9,325) was a reasonable value for such services. The firm further showed that it had out-of-pocket expenses on the project totalling $312.76. The jury's award of $9,637.76 evidently represents the sum of these two figures. *Held*:

1. The appellants' initial contention is that no recovery may be allowed on the basis of quantum meruit where, as in this case, the parties are shown to have entered into an express agreement governing the work in question. However, there was obviously no meeting of the minds regarding how the appellee's fee was to be calculated in the event the appellants chose not to go ahead with construction after receiving the plans. "Where an architect is employed by the owner of land to prepare plans and specifications for the construction of a building thereon, and does so, and the owner decides not to have the building erected, because of the estimated cost, but nevertheless retains the plans and specifications, in the absence of any guaranty as to the cost of the building, or agreement as to his compensation for preparing the plans and specifications, the architect would be entitled to recover the reasonable value of his services in preparing and furnishing the plans and specifications." *Douglas v. Rogers*, 10 Ga. App. 486 (2) (73 SE 700) (1912).

Since the agreement between the parties in this case did not provide any basis for measuring damages under the circumstances as they actually developed, a recovery based on implied contract was authorized. See generally *Fonda Corp. v. Southern Sprinkler Co.*, 144 Ga. App. 287, 292 (3) (241 SE2d 256) (1977).

2. The appellants contend that the appellee's pleadings were fatally defective in that the count of the complaint based on quantum meruit made reference to the existence of the parties' express contract. However, we have long since passed the stage where a judgment entered on a jury verdict may be set aside solely on the basis of a technical defect in the pleadings. Indeed, it has been the law since the original Code of 1863 that "[a] judgment may not be arrested or set aside for any defect in the pleadings or the record that is aided by verdict or amendable as a matter of form." Code of 1863, § 3506 (currently OCGA § 9-12-15). The appellants' reliance on such cases as *Millican Elec. Co. v. Fisher*, 102 Ga. App. 309 (1) (116 SE2d 311)

(1960); *Georgia Realty & Ins. Co. v. Oakland &c. of Ga.*, 113 Ga. App. 231 (148 SE2d 53) (1966); and *Gilbert v. Powell*, 165 Ga. App. 504, 508 (301 SE2d 683) (1983), is misplaced, the first two of these cases having been decided on the basis of the demurrer practice existing prior to the Civil Practice Act, and the third having dealt with a pre-trial ruling on a motion to strike.

3. The appellants contend that the jury improperly based its quantum meruit award on the cost to the appellee of providing the services in question, rather than on the benefit the services represented to themselves, which, according to the appellants, was nothing. This contention is without merit. The jury was presented with the actual plans and working drawings prepared by the appellee and heard testimony purporting to establish a reasonable value for the time and expense which had gone into their preparation. Certainly, the jury was not bound by the appellants' self-serving testimony that the appellee's services were worthless, particularly in view of the evidence that the plans had been prepared under Mrs. Matthews' direct guidance and had received her initial approval. "Value of services rendered in essence is exclusively a matter for jury determination." *Pembroke Steel Co. v. Technical Sales Assoc.*, 138 Ga. App. 744, 745 (3) (227 SE2d 491) (1976). There was sufficient evidentiary support in this case for the jury's award. Accord *Maloy v. Ewing*, 157 Ga. App. 95 (4) (276 SE2d 145) (1981); *City of St. Marys v. Stottler Stagg & Assoc.*, 163 Ga. App. 45 (1) (292 SE2d 868) (1982).

4. Attorney fees may be awarded as expenses of litigation pursuant to OCGA § 13-6-11 "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." A recovery under the latter two categories is authorized where the evidence reveals no bona fide controversy or dispute with regard to the defendant's liability. See generally *D. H. Overmyer Co. v. Nelson-Brantley Glass Co.*, 119 Ga. App. 599 (2) (168 SE2d 176) (1969); *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380 (3) (277 SE2d 753) (1981). Whether or not a bona fide controversy exists is normally for the jury to decide. See *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 437 (301 SE2d 493) (1983), and cases cited therein.

The only explanation offered by the appellants for their refusal to pay at least some portion of the appellee's bill was that the plans proved too costly to implement. However, as pointed out in Division 1, supra, this would not constitute a defense to the appellee's claim absent an agreement between the parties specifying a limit on construction costs. The appellant's evidence with respect to the value of its services being essentially unrefuted, we hold that the jury could reasonably have concluded under these circumstances "that there existed no bona fide controversy as to [appellants'] liability, but rather

that [they were] merely 'stonewalling,' as contemporary idiom has it — that is, . . . attempting to utilize what this court has denominated 'the "so sue me" ploy.' (Cit.)" *Thompson Enterprises v. Coskrey*, 168 Ga. App. 181, 184 (308 SE2d 399) (1983). It follows that an award of attorney fees as expenses of litigation was authorized pursuant to OCGA § 13-6-11. Accord *Beaudry Ford v. Bonds*, 139 Ga. App. 230 (2) (228 SE2d 208) (1976); *Buffalo Cab Co. v. Williams*, 126 Ga. App. 522, 524-525 (191 SE2d 317) (1972).

*Judgment affirmed. McMurray, P. J., concurs. Benham, J., concurs specially.*

BENHAM, Judge, concurring specially.

Although I concur fully in all that is said in the first three divisions of the opinion in this case and with the result in the fourth division, I believe it is important to clarify the basis upon which I find the award of attorney fees to be sustainable in this case. It is my view that the absence of a bona fide controversy over the *fact* of liability does not automatically present a jury issue as to the plaintiff's entitlement to attorney fees if there is a bona fide controversy concerning the *amount* of liability. That is to say, a defendant who does not seriously contest the issue of liability should not be subject to an award of attorney fees if that defendant demonstrates that there is a reasonable dispute concerning the amount of the liability. In the present case, however, as the opinion notes, the plaintiff's showing of the amount of liability was unrefuted; the defendants asserted only that the plans were of no value to them because implementation of them would be too expensive. Under those circumstances, the defendants did not show that there was a bona fide controversy concerning either the fact or the amount of liability, and the award of attorney fees to appellee was appropriate.

DECIDED NOVEMBER 20, 1985.

*Robert C. Martin, Jr.*, for appellants.
*William G. Scrantom III*, for appellee.