A89A1296. GUNNIN et al. v. PARKER et al.
(390 SE2d 596)

DEEN, Presiding Judge.

This appeal arises from a plaintiffs' verdict in a suit by the purchasers of a house (appellees) against the developer/sellers of the house (appellants). The issues appellants raise on appeal all concern the propriety of an award of expenses of litigation.

1. In this case, the appellees purchased the house in question for $112,000. After purchasing the house, the appellees proceeded to remove and discard the steel support posts in the basement; further, they removed a substantial quantity of dirt away from the rear footings of the house, and had a swimming pool contractor install a pool behind the house, necessitating driving bulldozers and concrete trucks on the driveway. There was expert testimony that these actions likely caused the cracking in the structure ultimately complained about by the appellees.

When the appellees communicated their complaints to the appellants, at one point the appellants offered either (1) to repair the structure at the appellants' expense, (2) to pay the appellees the estimated cost of repairs, or (3) to repurchase the home from the appellees. The appellees rejected that offer and three weeks later filed this action seeking over $15,000,000 in damages. The appellees sued the realtor involved for an additional $5,040,000. (They also threatened to sue the swimming pool contractor for a violation of Georgia's Solid Waste Management Act for leaving soft drink bottles and caps around the pool's installation area.)

Expenses of litigation may be awarded pursuant to OCGA § 13-6-11 where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. The evidence in this case failed to demonstrate any bad faith on the

part of the appellants. The existence of a bona fide dispute over both liability and damages was so clear, that the issue could not be passed off to the jury. Where a bona fide controversy clearly exists between the parties, there is not "any evidence" to support an award for expenses of litigation. *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746 (365 SE2d 540) (1988); *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219 (312 SE2d 386) (1983). Accordingly, the award for expenses of litigation must be reversed.

2. The appellees' motion for a penalty for frivolous appeal is necessarily denied.

*Judgment reversed. Carley, C. J., Banke, P. J., Birdsong, Sognier and Pope, JJ., concur. McMurray, P. J., Benham and Beasley, JJ., dissent.*

BENHAM, Judge, dissenting.

Because I cannot agree with the majority that the evidence adduced at trial demands the conclusion that there was a bona fide controversy between the parties such as would prevent the award of expenses of litigation, I must dissent.

Expenses of litigation may be awarded pursuant to OCGA § 13-6-11 where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, and a recovery under the latter two provisions is authorized where the evidence reveals no bona fide dispute with regard to the defendant's liability. *Matthews v. Neal, Greene & Clark*, 177 Ga. App. 26 (4) (338 SE2d 496) (1985). The question of whether there is a bona fide dispute is one for the jury, and where there is some evidence to support its determination in that regard, this court cannot say as a matter of law that there was a reasonable defense. *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432 (2) (301 SE2d 493) (1983). In the present case, not only is there some evidence that appellants stubbornly refused to correct construction defects and forced appellees to bring suit as the only means of relief, there was abundant evidence. For this court now to reverse the judgment and rule that there was, as a matter of law, a reasonable defense is an unwarranted appellate invasion of the jury box.

Appellees produced evidence at trial which authorized the jury to find that appellants' negligence was the cause of the numerous serious defects in the house; that appellants were aware of the defects and agreed to repair them; that after appellants refused to make repairs and appellees threatened to sue, appellants met with appellees and attorneys for each side and reached an agreement that appellants would correct the defects, but then reneged on the agreement after appellees communicated that they had terminated the services of their attorney; and that appellants had never corrected the defects,

forcing appellees to bring suit. That evidence was sufficient to show appellants' bad faith.

Appellants attempted to show, and claim on appeal that they did show, that the damages were all caused by appellees' negligent changes to the structure of the house; that appellants offered to buy back the house from appellees; and that it was appellees who prevented a resolution of the disputes between the parties. The efforts to portray appellees as responsible for the damages were unsuccessful, however, since appellees' experts testified clearly that none of appellees' changes adversely affected the house, and appellants' experts' contrary testimony was based on hypotheticals which did not include all the salient facts. For instance, appellants attempted to show that appellees caused some of the cracking in the walls by removing and discarding steel support beams in the basement. Appellees' expert noted that any loss of support would have cracked different walls and could not have caused the damage at issue here. Appellants' witness's opinion to the contrary, impliedly accepted by the majority, was in response to a hypothetical which omitted the uncontradicted fact that the support beams had been immediately replaced with stud walls which provided as much if not more support. Although appellants contend in their briefs to this court, and the majority finds as a fact, that appellees removed a "substantial" amount of soil from the rear footing of the house, the evidence actually shows only that a thin layer was removed for the installation of a patio, an amount which expert testimony established was not sufficient to remove significant support from the foundation. In addition, the movement of the foundation which caused damage to the house was in a different direction altogether. Appellants claim in their briefs, and the majority accepts as true notwithstanding substantial evidence to the contrary, that appellees caused damage to the driveway by permitting bulldozers and concrete trucks to drive on it for the purpose of installing a swimming pool. The record shows, however, that the testimony on which appellants rely for that proposition showed only that a single tracked vehicle had driven on the driveway and that it was not the cause of any of the cracking. Other evidence shows that the cracking in the driveway occurred and was the subject of complaints to appellants prior to the time when appellants claim appellees permitted heavy vehicles to use the driveway. Appellants' purported offer to correct the damages or to pay for repairs, on which the majority relies, was shown by the evidence to ignore many of the items of damages appellants had agreed at closing to repair. In asserting in their brief that they offered to repurchase the house, an assertion accepted at face value by the majority, appellants omit to state that the offer was to assume appellees' mortgage, which appellants had reason to know was not assumable. Also ignored by appellants in their arguments and by the majority in

its factfinding is the fact that appellees did not file suit until they had tried for more than a year to get appellants to meet their obligations. Appellants' assertion that it was appellees who were litigious is based on such matters as appellees' supposed threat to sue a swimming pool contractor for violating Georgia's Solid Waste Management Act by burying "pop bottles, wrappers and so forth" around the pool area. Notwithstanding the majority's adoption of the contentions in appellants' brief, the record contains no support for such an assertion. An agent of the swimming pool contractor testified that Mr. Parker complained in a letter of the contractor's employees' behavior in burying their refuse in the backfill of the pool, and commented that it was a violation of the Solid Waste Management Act. The contractor's agent did not testify that appellees threatened a suit based on that act. In fact, the contractor's agent read into the record the paragraph of the letter which allegedly contained the threat to sue: that paragraph made no reference to the Solid Waste Management Act, but merely stated that if the contractor had not begun work on correcting specified defects by a certain date, appellees would assume that the contractor intended to breach the contract, and "the beginning of proper action [would] be taken to remedy the situation."

The majority has usurped the role of the jury by finding facts, and those facts are not supported by the evidence. Being committed to the long-standing rule that this court does not reverse a jury's verdict if there is any evidence to support it, and being convinced by having examined the record that there is evidence to support the jury's award of expenses of litigation to appellees, I cannot concur in the majority's reversal of the judgment. I must, therefore, dissent.

I am authorized to state that Presiding Judge McMurray and Judge Beasley join in this dissent.

DECIDED DECEMBER 19, 1989 —
REHEARING DENIED JANUARY 16, 1990 AND REHEARING DISMISSED
FEBRUARY 7, 1990 —

*Robert D. Cheeley, Joseph E. Cheeley, Jr.,* for appellants.
*Richard E. Collar, Jr.,* for appellees.