2000 ME 195

**FORREST ASSOCIATES**

v.

**PASSAMAQUODDY TRIBE.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 2000.

Decided Nov. 3, 2000.

Christopher C. Taintor, Esq., (orally), Paul F. Driscoll, Esq., Norman, Hanson & DeTroy, Portland, for plaintiff.

Melissa A. Hewey, Esq., (orally), Gregory W. Sample, Esq., Drummond Woodsum & MacMahon, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

DANA, J.

[¶ 1] Passamaquoddy Tribe appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*), following a jury-waived trial, granting recovery to Forrest Associates on its claims of breach of contract and unjust enrichment in the amount of $42,449.81. On appeal, the Tribe contends that no contract existed and that Forrest Associates was not entitled to recovery in either quantum meruit or unjust enrichment. We agree and vacate the judgment.

## I. CASE HISTORY

[¶ 2] Forrest Associates is a Maine corporation that provides management consulting services and engages in market feasibility studies and project development work. In early 1994, Mark Stickney, a Forrest employee, and Thomas Tureen, legal counsel and advisor to the Tribe, discussed whether Forrest Associates could assist the Tribe in the development of a high stakes bingo operation in Albany Township, Oxford County, Maine. Forrest conducted a market assessment of the operation and submitted it, along with a description of Forrest's proposed involvement in the project, to Tureen in the form of an engagement letter. The letter set forth Forrest's proposed role in all phases of the project and provided Forrest's estimate of its fees and expenses. The letter stated that Forrest agreed to postpone receipt of its fees and expenses for the initial phase of the project, but noted that "[u]pon completion of this phase of the project, it is understood that we will be paid in full for Phase One." William Forrest, founder and chief executive officer of Forrest Associates, testified at trial that Tureen said that Forrest Associates "would be required to complete this [initial] phase of the project on spec." That is, "rather than having the tribe commit to

paying the 10 to $15,000 upon completion of the project, [Forrest Associates] would have to assume that risk and ... it would be paid provided the tribe decides to proceed with the project."[1] Forrest asked the Tribe to sign the engagement letter. The Tribe never did.

[¶ 3] During this initial phase, Tureen asked Forrest to perform some minor additional work that included an assessment of additional revenue opportunities such as off-track betting. Forrest performed the additional work and drafted a revised market assessment. In July 1994, Tureen told Forrest that the Tribe wished to proceed with the project and that Forrest should develop a comprehensive business plan. Forrest then developed a plan that further defined the scope of the project and contained a comprehensive financial schedule that addressed anticipated costs, revenues, and expenses of development. Tureen again told Forrest that if the Tribe chose to proceed with the project, "the fees that had been incurred on spec would be paid," and that any subsequent fees would be paid as the project progressed. Forrest submitted the plan to the Tribal Council at a meeting in August 1994.

[¶ 4] The plan was discussed in detail at the August meeting. In general terms, the plan described Forrest's involvement in each stage of the development and operation of the enterprise. It also contained construction and management budgets that included Forrest's historical and prospective fees. Forrest expected to perform work on the project through August 1995 at a cost to the Tribe of $228,960, with 35–40% of that total representing Forrest's anticipated profits. The Tribe did not object to either the work Forrest was to perform or the rates Forrest was to charge.

[¶ 5] When Forrest presented the plan to the Council, Tureen asked whether Forrest understood that payment for the initial phase of the project was on a contingent basis such that Forrest would only be paid if the Tribe developed the project. William Forrest responded that he understood that the "recapture of those fees is provided that the project turns into a reality." William Forrest also indicated that the project needed an immediate infusion of funds from the Tribe. The Council, however, was reluctant to make a financial contribution at that time. A Council member then made a motion "to proceed with pursuing this with Forrest Associates and resolve the contribution questions for later." Tureen then suggested "that we proceed in accordance with the plan submitted, which doesn't commit you [the Tribe] today that you would need money, and then the understanding is that there will be a more formal agreement with you later." The motion was approved.

[¶ 6] The more formal agreement alluded to never materialized. Nevertheless, Forrest continued to work on the project

1. The Tribe contends that the Superior Court erred by admitting Tureen's statements. We review the trial court's evidentiary rulings for clear error and an abuse of discretion. *See Maine Shipyard & Marine Ry. v. Lilley*, 2000 ME 9, ¶ 20, 743 A.2d 1264, 1269; *Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 29, 742 A.2d 482, 491 (stating that we "will only vacate an evidentiary ruling if the trial court committed a clear abuse of discretion"). M.R. Evid. 801(d)(2)(D) provides that "a statement is not hearsay if ... it is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, but not to the principal or employer, made during the existence of the relationship." *Id.* Authorized statements made by the agent to a third person, therefore, are considered admissions of the principal. *See* RICHARD H. FIELD & PETER L. MURRAY, MAINE, EVIDENCE § 801.7 at 413 (2000 ed.).

The record established that Tureen served as the Tribe's long-time legal counsel, that Tureen met with Forrest throughout the initial phase of the project and that Forrest performed work at Tureen's request, and that Tureen told Forrest that the Tribe wanted to proceed with the project. Competent evidence exists in the record to support these factual determinations, and thus they are not clearly erroneous. Consequently, the Superior Court did not abuse its discretion by admitting Tureen's statements.

by soliciting bids from engineers, researching and obtaining presentations from architects, and locating financing for the project. In November 1994, however, the Tribe told Forrest that it would not provide any short-term funding and that weather considerations would soon stop work on the project for the winter. William Forrest testified that he did not believe Forrest performed any work for the Tribe after 1994. The Tribe never paid Forrest for any work, and the facility was never built.

[¶ 7] In 1996, the Tribe obtained a financing commitment for the project from Snake River Financing, Ltd. The Tribe contends that it did not use any of Forrest's work product in obtaining the financing, and that in fact the two projects were substantially dissimilar. Forrest, however, contends that the development costs were virtually the same as the costs in its proposal, and that the Tribe had continued access to the Forrest proposal when making all design decisions for the Snake River facility. Despite the Tribe's financing agreement with Snake River, the facility has not been built because opponents of the project successfully challenged regulatory approval on the ground that the facility would not be erected on "Indian land." We affirmed in *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, 745 A.2d 387.

[¶ 8] In 1997, Forrest brought this suit. The Superior Court (Cumberland County, *Mills, J.*) granted the Tribe's motion for summary judgment on the ground that both the alleged contract and Forrest's claims for quantum meruit were barred by 25 U.S.C. § 81 (1983) because they dealt with services to the Tribe relative to their lands and the contract was not approved by the Secretary of the Interior and the Commissioner of Indian Affairs. We vacated and remanded because section 81 does not apply to an agreement concerning land not held in trust by the United States. *See Forrest Assocs. v. Passamaquoddy Tribe*, 1998 ME 240, ¶ 18, 719 A.2d 535,

539. On remand, judgment was entered in favor of Forrest on theories of breach of contract and unjust enrichment or quantum meruit in the amount of $42,449.81. After the Tribe unsuccessfully moved for Findings of Fact and Conclusions of Law pursuant to M.R. Civ. P. 52(b), this appeal followed.

## II. BREACH OF CONTRACT

[¶ 9] The establishment of a contract requires that the parties mutually assent "to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me.1996) (quoting *Roy v. Danis*, 553 A.2d 663, 664 (Me.1989)). The Tribe contends that no contract existed because the evidence fails to establish both the parties' intention to be bound and the specific terms of the purported contract. The intent of the parties in entering a contract, whether a contract exists, and whether a breach has occurred are all questions of fact that we review for clear error. *See Spottiswoode v. Levine*, 1999 ME 79, ¶ 15, 730 A.2d 166, 172; *VanVoorhees*, 679 A.2d at 1080; *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me.1996) (quoting *Bates v. Anderson*, 614 A.2d 551, 552 (Me.1992)).

[¶ 10] Forrest presented the plan to the Council at the August meeting. The plan was discussed in detail. The plan described Forrest's duties and obligations for the project, established a payment schedule for Forrest's fees, and further outlined the scope of the project's development and operation. At the conclusion of the meeting, however, the Tribe voted to move forward with planning for the project with the caveat that any responsibility of the Tribe to contribute its resources for work already performed would be revisited in a more formal agreement at a later

date. This evidence establishes that the Tribe did not intend to be bound by the vote alone. In effect, therefore, all that existed between the parties was an agreement to work towards an agreement. Such an agreement is unenforceable. *See Ault v. Pakulski*, 520 A.2d 703, 704–05 (Me.1987). Thus, the Superior Court's conclusion that a contract arose between the parties at the August meeting is clearly erroneous because no competent evidence exists in the record to support that determination.[2]

## III. QUANTUM MERUIT

[¶ 11] Quantum meruit describes the extent of liability under a quasi-contract theory and therefore involves the "recovery for services or materials provided under an implied contract." *Bowden v. Grindle*, 651 A.2d 347, 350 (Me.1994) (quoting *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994)). To sustain a claim in quantum meruit, a plaintiff must establish that "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Carvel Co. v. Spencer Press, Inc.*, 1998 ME 74, ¶ 12, 708 A.2d 1033, 1036. Determinations concerning these factors are questions of fact and are reviewed for clear error. *Paffhausen v. Balano*, 1999 ME 169, ¶ 9, 740 A.2d 981, 983.

[¶ 12] Forrest has failed to establish that it possessed a reasonable expectation of payment. The evidence demonstrates that Forrest provided its services "on spec." Forrest conceded that payment was contingent on the project turning into a reality. That reality never occurred. Accordingly, Forrest is not entitled to a recovery in quantum meruit because it cannot establish a reasonable expectation of payment.

[¶ 13] In addition, Maine law provides that the Tribe enjoys the same privileges and immunities as a municipality.[3] Municipalities are not liable for the payment of unauthorized services. *See A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 (Me.1994) (citing *Watts Detective Agency v. Inhabitants of County of Sagadahoc*, 137 Me. 233, 242, 18 A.2d 308, 312 (1941)). Consequently, we have been reluctant to impose quantum meruit liability on municipalities when the services rendered were not authorized by the municipality. *See Watts*, 137 Me. at 242, 18 A.2d at 312. *Cf. Cottle Enters., Inc. v. Town of Farmington*, 1997 ME 78, ¶ 17, 693 A.2d 330, 335–36 (rejecting developer's estoppel claim against municipality because town sewer superintendent lacked authority to bind the municipality by his letter to the developer regarding the town's sewage system capacity). In the present case, the evidence establishes that Tureen's requests were the catalyst for Forrest's work on the project prior to the August meeting. The evidence also demonstrates, and the Superior Court properly concluded, that Tureen, in making those requests, lacked the authority to bind the Tribe. Accordingly, Forrest may not recover in quantum meruit because Tureen, though an agent of the Tribe, nevertheless lacked the authority to bind the Tribe by his requests.

## IV. UNJUST ENRICHMENT

[¶ 14] To sustain a claim for unjust enrichment, a claimant must estab-

---

2. Forrest contends in its cross-appeal that it is entitled to recover lost profit damages resulting from the Tribe's breach of contract. Because we conclude that no contract arose between the parties, however, Forrest is not entitled to recovery.

3. *See* 30 M.R.S.A. § 6206(1) (1996). Section 6206 provides, in pertinent part, that "the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities ... and shall be subject to all the duties, obligations, liabilities and limitations of a municipality ...." *Id.*

lish "that it conferred a benefit on the other party ... that the other party had 'appreciation or knowledge of the benefit' ... and ... that the 'acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" *Howard & Bowie v. Cloutier & Briggs,* 2000 ME 148, ¶ 13, 759 A.2d 707, 710 (quoting *June Roberts Agency, Inc.,* 676 A.2d at 49). Unjust enrichment, therefore, permits recovery "for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay ...." *Paffhausen v. Balano,* 1998 ME 47, ¶ 6, 708 A.2d 269, 271. Trial court determinations on the elements of unjust enrichment are factual issues that will not be set aside as clearly erroneous unless there is no competent evidence in the record to support them. *See Howard & Bowie,* 2000 ME 148, ¶ 13, 759 A.2d at 710.

 [¶ 15] In the present case, it is unclear which theory the Superior Court relied on in granting Forrest's recovery. The judgment concludes that the Tribe "was aware of [Forrest's] work and has retained the benefit of that work," thereby referencing the elements of unjust enrichment, yet then relies on a case decided in quantum meruit in support of its conclusion. *See Matthews v. Neal, Greene & Clark,* 177 Ga.App. 26, 338 S.E.2d 496, 498 (1985).[4] As noted above, evidence in the record does not support Forrest's recovery in quantum meruit. In addition, the evidence in the record fails to establish that Forrest conferred a benefit on the Tribe. Although Forrest created the comprehen-

sive plan and presented it to the Tribe, there is no evidence that the Tribe benefitted from either the presentation or the information contained in the plan. To the contrary, the evidence demonstrates that Forrest made an elaborate marketing proposal to the Tribe that was ultimately rejected. Such evidence fails to satisfy the central element of proving a benefit conferred. Accordingly, the Superior Court erred in holding the Tribe liable for unjust enrichment.

The entry is:

Judgment vacated.

---

4. In *Matthews,* defendant/homeowner retained plaintiff/architectural firm to prepare plans for an addition to a farmhouse. *See Matthews,* 338 S.E.2d at 497. Although the parties never entered into a formal agreement with respect to the costs of the project, the parties did correspond regarding the firm's potential fees. *See id.* The plaintiff eventually submitted plans to the defendant's satisfaction, but the high overall cost prevented fur-

ther action on the project. *See id.* at 497–98. As a consequence, the addition was never built and plaintiff never received payment for its services. *See id.* at 498. Plaintiff commenced an action to recover in quantum meruit, and the Georgia Court of Appeals held that the firm was entitled to recover the reasonable value of the services in preparing and furnishing the plans and specifications that were retained by the defendant. *See id.*