STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-41

THAYER CORPORATION

RECEIVED & FILED

OCT 2 ? 2021

ANDROSCOGGIN
SUPERIOR COURT

VS.

DECISION AND ORDER

410 STILLWATER, LLC

On March 11, 2019, the Plaintiff, Thayer Corporation (hereafter "Thayer") filed a

complaint against Defendant, 410 Stillwater, LLC (hereafter "Stillwater") setting forth five

counts, to wit: Count I-Account Annexed; Count II-Breach of Contract; Count III-Unjust

Enrichment; Count IV-Quantum Meruit; and Count V- Violation of Prompt Pay Act. Stillwater

timely answered and also brought three counterclaims, to wit: Count I-Breach of Contract; Count

II-Breach of Warranties; and Count III-Accounting. Trial, jury waived, was held October 13,

2021. At trial testimony was received from Daniel Thayer, Andrew Kent, Paul Woods, and

Corey Dow. Plaintiff Exhibits A, B, C, D, E and F (hereafter "P. Ex. __") and Defense Exhibits

A, B, C, D, E, F, and G (hereafter "D. Ex. __") were all admitted. Based upon the evidence

received at trial, the court makes the following findings.

Findings of Fact and Incorporated Conclusions of Law.

In 2017, Paul Woods (hereafter "Woods), on behalf of Stillwater, asked Thayer to make a

proposal for the installation of an HVAC system for the storage facility Stillwater was building

in Bangor, Maine. Woods met with Andrew Kent (hereafter "Kent") on at least a couple of

1

occasions pursuant to which Kent and Thayer designed the HVAC system that would meet Stillwater's needs and budget. Thayer ultimately prepared and presented to Stillwater a contract that set forth the scope of work to be completed, project price of $127,000, and additional terms and conditions. (P. Ex. A). Paul Woods signed the contract on behalf of Stillwater on December 4, 2017. The contract was never signed by a representative of Thayer.

Of interest to resolution of this case is paragraph 3 of the terms and conditions which states in part *"Twenty-five percent (25%) of the project cost is due upon signing agreement......Thayer will charge interest on unpaid balances over thirty days old. Thayer will be entitled to costs and attorneys' fees to collect amounts due."* (P. Ex. A, p. 8). Thayer issued Stillwater an invoice dated December 12, 2017 in the amount of $31,750.00, with a description of *"Project billing for 25% deposit for installation of HVAC system in the new storage facility."* This invoice was not paid.

Thayer asserts the invoice for 25% of the project cost also included design work Thayer did in advance of the signing of the contract, and that the invoice was intended to recover the advance costs associated with design and mobilization. The court disagrees with that assertion, and finds that the contract provision "Twenty-five percent (25%) of the project cost is due upon signing agreement" unambiguously provides only a timing requirement of when the initial 25% was owed. To the extent that that sentence of the contract is ambiguous, and the court is to look at evidence outside of the contract, Thayer still does not prevail. Other than providing testimony generally that the 25% was to recoup costs and time incurred in advance of the execution of the contract for design and mobilization, Thayer has failed to quantify that cost or expense. And there is no evidence that Stillwater was ever advised that the invoice for 25% was for advance work. On the other hand, the invoice for the 25% describes the amount owed as a "deposit".

2

After Woods signed the contract, Thayer completed its design and drawings of the system, and commenced some limited work on site. By that time the concrete for the building had been poured and the shell/framing of the building was erected. The roof had also been installed, but the membrane had not been put on and the building was not completely sealed. It being December, and concerned the concrete could be damaged, Stillwater needed a temporary heat source for the building. Woods testified he asked Kent to install a temporary heat source. Kent does not recall that request.

The scope of work section of the contract includes *"Furnaces installed in final location to provide temporary heat"*. (See P. Ex. A, p. 5). Stillwater maintains that that provision required Thayer to install a temporary heating source immediately upon signing of the contract. Thayer maintains that that provision meant that the furnaces it was installing in their final location could be used to provide temporary heating. Thayer also explained that the furnaces it was installing could not be installed until the building and roof were sealed and fully protected from the elements. Stillwater's counterclaims focus primarily on the damages it incurred in having to pay other vendors to provide a temporary heat source. Those counterclaims are not successful.

First of all, the court finds the contract is unambiguous in that the term *"Furnaces installed in final location to provide temporary heat"* applies to the furnaces Thayer was installing pursuant to the contract. And the court finds credible Thayer's explanation that those furnaces could not be installed until the building and roof were sealed. In addition, the court is not persuaded that Stillwater made a demand upon Thayer to immediately install a "temporary" heat source in December. By the time Stillwater had signed the contract on December 4, 2017, Stillwater's need for a temporary heat source to protect the new concrete was already in existence. If an immediate temporary heat source was contemplated, it would seem to the court

that such contract terms would be explicit. Kent and Thayer testified that there was no demand made upon them for a temporary heat source. The court has also reviewed the emails admitted into evidence. (See P. Ex. D, and D. Ex's. D and E). In those emails, on behalf of Stillwater, Woods does write that Thayer's inability to provide a winter heat source was one of the reasons it lost confidence in Thayer. But there is insufficient clarity in the emails written by either party to persuade the court to conclude that temporary heating was a contract term, or that a specific demand was made upon Thayer to install a temporary heat source. The court accepts that Stillwater had a need for temporary heating, and it may have even inquired in December, after the contract was signed, if Thayer could assist. But the court does not find this was a contractual obligation that Thayer breached. In summary, the court finds that the contract did not require Thayer to provide a temporary heating source.

As stated, after Woods signed the contract on behalf of Stillwater, Thayer commenced more detailed work towards the contract. But in late winter of 2018, Stillwater terminated the contract. Although the parties are not in precise agreement whether it was in March or February, the testimony from both sides is consistent that Woods went to Thayer's office where he met with Kent, and Woods told Kent Stillwater was canceling the project, and that he knew Stillwater owed Thayer money for materials and labor provided to date. Kent told Woods he would have the billing department send a bill, and both Woods and Kent described the meeting as cordial.

Kent also testified that Woods told him the reason Stillwater was canceling the contract was because of costs with the project. Woods testified he told Kent the reason was because he was losing confidence with Thayer. That difference in testimony need not be resolved, although emails exchanged between the parties do not support Woods testimony as to what he told Kent as

4

for a reason why he was canceling the contract. More importantly is that Woods concedes he told Kent that Stillwater would pay Thayer for the work completed.

By an invoice dated May 14, 2018, Thayer sent Stillwater a bill in the amount of $15,043.54. (See P. Ex. C) The description for this bill was "*Project billing-billed materials and labor to date, job was canceled by the customer.*" Stillwater did not pay the bill. The record is unclear as to communications between Thayer and Stillwater after May 14, 2018 until November 26, 2018 when Dan Thayer sent Woods an email demanding payment for the "open invoices". (See P. Ex. D). It is inferred the amount being demanded was for both invoices of $31,750.00 and $15,043.54, plus interest. Woods responded asserting the amount of the invoice was false (the court infers this was reference to the invoice for $31,750), but did recognize Stillwater owed some money for a small portion of work completed. (Id.)

Thayer filed this suit in March, 2019, seeking $54,095.88 which was the amount Thayer claimed was owed on both invoices, plus interest of 18% per annum. Filing of the suit led to further email discussions. (See D. Ex's D and E).

From these facts, the court finds a contract existed between Thayer and Stillwater to install an HVAC system in exchange for the project price of $127,000. (See *Forrest Assocs. V. Passamaquoddy Tribe,* 2000 ME 195, ¶ 9- the establishment of a contract requires that the parties mutually assent to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.) And the court finds that Thayer partially performed on that contract until the point in time when Stillwater unilaterally terminated the contract. The remaining question is what is owed for that amount of work completed.

5

Generally, in the case of partial performance by a contractor, the contractor's damages are an amount to compensate the contractor for expenses incurred in reliance upon the contract, plus an amount for profit or expectancy. (See Horton and McGehee, *Maine Civil Remedies*, §12-6(b)(1) 4ᵗʰ ed. (2004)). As already discussed, the court finds that Thayer is not entitled to receive payment on the initial invoice of $31,750. But Thayer is entitled to payment for the cost of its material and labor provided to date, plus some reasonable amount for profit.

After Stillwater terminated the contract, Thayer issued an invoice in the amount of $15,043.54 for "billed materials and labor to date". However, also admitted into evidence is the Job Expense Report. (See P. Ex. E, third attachment). The job expense report itemizes the actual expenses to be $9201.26. The job expense report however does not include any monies for overhead or profit. Even Stillwater's expert, Corey Dow, allows that overhead and profit is customarily 10% for each. Kent testified that the invoice of $15,043.54 was prepared at his request by his instruction to Thayer's billing department. The court finds that Thayer has met its burden of proof that this is the amount owed. That invoice represents the amount of costs for labor and materials, plus an additional amount for profit and overhead. The court further notes that although Stillwater clearly objected to Thayer's invoice in the amount of $31,750.00, the court discerns no evidence on this record that it actually objected to the invoice of $15,043.54. (See D. Ex. E, email from the Defendant on March 21, 2019 at 6:31 AM in which Woods comments that the pricing credit received from ABM for work done by Thayer was substantially less than $15,043.54, but does not actually object to the invoice amount). Judgement will issue for Plaintiff Thayer on Count II-Breach of Contract in the amount of $15,043.54. As judgment is issued for breach of contract, Count III-Unjust Enrichment and Count IV-Quantum Meruit are

dismissed. As for Count I-Account Annexed, the account included the invoice for $31,750 which the court has denied, and accordingly judgment is issued for the Defendant Stillwater on Count I.

Interest.

As previously stated, the original contract provided "Thayer will charge interest on unpaid balances over thirty days old. Thayer will be entitled to costs and attorneys' fees to collect amounts due." (P. Ex. A, p. 8). Each of the invoices issued by Thayer disclosed "Unpaid balances in excess of thirty days shall be subject to an interest charge of one and one-half percent (1.5%) per month. When Stillwater canceled the contract in February or March of 2018, Woods made clear Stillwater was prepared to pay for Thayer's material and costs to date. On or about May 14, 2018 Thayer issued an invoice in the amount of $15,043.54, and the invoice clearly disclosed interest would be charged for invoices which were not paid. And Stillwater never specifically objected to this invoice. The court finds Thayer is entitled to its interest charge of 1.5% per month commencing 30 days after the invoice, or $225.65 per month ($7.5267 per diem), commencing June 14, 2018.

However, on August 3, 2021, Stillwater tendered $6,257.00, which amount corresponded with the Order on Motion for Attachment dated November 2, 2020. Accordingly, the monthly interest or finance charge reduces to $131.80 per month ($4.3933 per diem) effective August 3, 2021. (($15,043.54-$6257.00) X 1.5%). In summary, the finance charges from June 14, 2018 to August 3, 2021 total $8499.58 (37 months, 20 days) and for the period of August 4, 2021 to October 29, 2021 total $382.21(87days), for a grand total of $8,881.79.

7

<u>Count V- Violation of Prompt Pay Act</u>

In Count V, Thayer asserts Stillwater violated Maine's Prompt Pay Act, and seeks payment of attorney fees as well as penalties, and interest. 14 M.R.S.A. §1111, *et. seq.* 14 M.R.S.A. §1118 provides:

> **1. Withholding payment.** Nothing in this chapter prevents an owner, contractor or subcontractor from withholding payment in whole or in part under a construction contract in an amount equalling the value of any good faith claims against an invoicing contractor, subcontractor or material supplier, including claims arising from unsatisfactory job progress, defective construction or materials, disputed work or 3rd-party claims.
> **2. Penalty.** If arbitration or litigation is commenced to recover payment due under the terms of this chapter and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this chapter, the arbitrator or court shall award an amount equal to 1% per month of all sums for which payment has wrongfully been withheld, in addition to all other damages due and as a penalty.
> **3. Wrongful withholding.** A payment is not deemed to be wrongfully withheld if it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against which an invoicing contractor, subcontractor or material supplier is seeking to recover payment.
> **4. Attorney's fees.** Notwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter must be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses.

The court finds that the litigation in this case was driven principally by Thayer's demand for payment in full of its invoice for $31,750.00. Stillwater consistently acknowledged it owed Thayer for labor and materials provided up to the time Stillwater canceled the contract, but disputed owing the invoice for $31,750. It was Stillwater disputing and refusing to make any payment on that invoice that led to this litigation. Even though the court has found for Thayer on a breach of contract claim for the invoice of $15,043.54, the court cannot find that Thayer "substantially prevailed", since the litigation was driven by a claim Thayer lost. Accordingly, judgment is entered for Defendant Stillwater on Count V.

The entry is

Judgment is granted in favor of Plaintiff Thayer
Corporation against Defendant 410 Stillwater, LLC on
Count II of Plaintiff's Complaint in the amount of
$15,043.54, plus interest as called for in the contract of
$8,881.79 through October 29, 2021, for a total of
$23,925.33 through October 29, 2021, plus post-judgment
interest and costs as allowed by law. Counts II and III of
Plaintiff's complaint are dismissed.

Judgment is granted to Defendant 410 Stillwater, LLC on
Counts I and V of Plaintiff's complaint.

Judgment is granted in favor of Plaintiff Thayer
Corporation on Counts I, II and III of Defendant 410
Stillwater, LLC's counterclaims.

The Clerk is directed to enter this order into the docket by
reference pursuant to M.R.Civ.P. 79(a).

Date:   October 29 , 2021

Harold Stewart, II
Justice, Superior Court

9

STATE OF MAINE
ANDROSCOGGIN, ss

SUPERIOR COURT
DOCKET NO. CV-19-41

Thayer Corp.,                            )
                                         )
            *Plaintiff,*                 )
                                         )
      v.                                 )
                                         )
410 Stillwater LLC,                      )
                                         )
            *Defendant.*                 )

NOV 2 '20 PM4:32
ANDRO SUPERIOR COU

**Order on Motion for Attachment**

This matter comes before the court on Plaintiff's motion for prejudgment attachment. The court has considered Plaintiff's motion and all supporting documentation as well as Defendant's opposition. Upon consideration of the affidavits, memoranda and all supporting documents, the court orders as follows.

Pursuant to M.R. Civ. P. 4A,

> No property may be attached unless such attachment for a specified amount is approved by order of the court. . . . upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

The standard for attachment on trustee process is the same. M.R. Civ. P. 4B(c). Of particular note in this case,

> [W]hether a party will receive an attachment depends on the party's proof, by a preponderance of the evidence, of both the likelihood of success in the underlying suit and the likelihood of recovering in that amount or greater. *Boisvert v. Boisvert*, 672 A.2d 96, 98 n.3 (Me. 1996).

*Estate of Summers v. Nisbet*, 2016 ME 88, ¶6. Thus, it is not enough for Plaintiff to establish that it is likely to succeed in some amount against Defendant; Plaintiff must establish a basis for the specific amount sought from that party. *See also Bowman v. Dussault*, 425 A.2d 1325, 1329 (Me. 1981).

1

In this case, the parties entered into a contract in 2017[1] for Plaintiff to provide HVAC services and construction at Defendant's new storage facility. *Exhibit C to Complaint and Thayer Affidavit*. The total contract price was $127,000. The contract states that as follows:

> Twenty-five percent (25%) of the project cost is due upon signing agreement. Upon amounts unpaid after thirty (30) days from invoice date, Thayer may stop work under this Agreement without notice, cancel this Agreement, and commence actions to preserve a lien on the Customer's property. Thayer will charge interest on unpaid balances over thirty days old. Thayer will be entitled to costs and attorneys' fees to collect amounts due.

*Exhibit C,* ¶ 3, Terms and Conditions. On December 12, 2017, Plaintiff billed Defendant for the 25% deposit of $31,750, but Defendant never paid that. Despite the fact that it had not received the deposit, Plaintiff commenced work on the project. Sometime thereafter Defendant terminated the contract, although the parties dispute whether it had cause to do so. Plaintiff then sent Defendant an invoice dated May 14, 2018 for $15,043.54[2] for "billed materials and labor to date." Defendant has not paid anything to Plaintiff on the contract.

Plaintiff filed suit, seeking $54,095.88 on account annexed, for breach of contract, unjust enrichment, quantum meruit and violation of the Prompt Pay Act. That sum is comprised of the unpaid deposit amount of $31,750, plus $15,043.54, plus finance charges of 18% per annum through approximately November 2018. Plaintiff also seeks attachment , including attachment on trustee process, in that amount.

Defendant counterclaimed, alleging that the partial work that was completed was defective, alleging that the work done has a value no more than $6,257. Defendant explains its position further in its response to the attachment motion.

---

[1] The proposal from Plaintiff is dated November 6, 2017; Defendant signed it on December 4, 2017.

[2] The invoice said the total due was $15,043.54 but then said "net due $15,269.19" without any explanation. No explanation is provided in the affidavits or memoranda.

2

There seems little question that if Plaintiff is entitled to the $31,750 deposit at this stage, that obligation must arise from the contract and does not represent a benefit conferred or work done. Plaintiff seems to be arguing that it is in the nature of liquidated damages that it is entitled to regardless of the amount of work performed. The court disagrees. The contract simply says that "[t]wenty-five percent (25%) of the project cost is due upon signing agreement." The plain language makes it clear that this is a matter of timing of payment towards the contract, not forfeited damages in the event of early termination. Plaintiff could have refused to commence work until the deposit was paid, but chose not to do so. It is not entitled to it now.

That leaves the question of how much Plaintiff is entitled to at this point. Certainly Plaintiff billed Defendant for work to date in the amount of $15,043.54. Even after Defendant counterclaimed and detailed that Plaintiff had not provided that much value in work and materials, however, Plaintiff gave no defense or detail of that amount. While it is clear that Plaintiff did some work, and that the work presumably has value, the court cannot say that is more likely than not *on this record* that Plaintiff will recover judgment in an amount more than $6,257 plus interest and costs.

Therefore, it is Ordered:

**Attachment, including attachment on trustee process, may be made against Defendant 410 Stillwater, LLC, and its property, both real and personal, tangible and intangible, and not otherwise exempt from attachment and attachment on trustee process in the amount of $10,280 ($6,257 plus 18% interest for 3 years).**

This order may be incorporated on the docket of the case by reference pursuant to Me. R. Civ. P. 79(a).

Dated: 11/2/2020

Valerie Stanfill
Justice, Maine Superior Court

3