STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-142

JAYNE M. SOULES AND DANIEL
BUCK SOULES,

      Plaintiffs

v.

LISA BOSSE,

      Defendant

ORDER

RECEIVED & FILED

MAR 1 8 2015

ANDROSCOGGIN
SUPERIOR COURT

Before the court is Plaintiffs Jayne and Daniel Soules' Motion for Summary Judgment on Defendant Lisa Bosse's Second Amended Counterclaim ("Counterclaim"). The Counterclaim arose in response to Plaintiffs' Complaint against Defendant and the ensuing court dispute between the parties over a horse named Knotty. The court held a number of hearings with the parties regarding the proper way to proceed in regard to Knotty, imposed a preliminary injunction on December 5, 2013, and ultimately vacated that injunction on January 14, 2014. Knotty has since died[1], but the Counterclaim remains. Defendant's Counterclaim asserts four counts: Count I is for slander, libel and/or defamation; Count II is for intentional or negligent infliction of emotional distress; Count III is for unjust enrichment; and Count IV is for malice.[2]

I.     Factual and Procedural Background

The following facts are gathered from Plaintiffs' statement of material facts (S.M.F.), Defendant's opposing statement (O.S.M.F.), Defendant's additional statement (A.S.M.F.), and Plaintiffs' reply statement (R.S.M.F.).

In 2012, Plaintiffs arranged to board their horse, Knotty, at Defendant's horse farm. (S.M.F. ¶1; O.S.M.F. ¶1.) Subsequently, on April 15, 2013, Plaintiff Jayne Soules signed an agreement that transferred ownership of Knotty to Defendant. (S.M.F. ¶ 2; O.S.M.F. ¶ 2.) Defendant drafted the agreement. (S.M.F. ¶ 2; O.S.M.F. ¶ 2.) Pursuant to Plaintiff Jayne Soules' request, Defendant added right of first refusal language to the contract. (S.M.F. ¶ 3.) The

---

[1] Although not explicitly clear, the court presumes that Knotty was euthanized.
[2] The court notes that malice is not a cause of action. The court infers that Defendant included a malice count to make it clear that she was seeking punitive damages. As none of Defendant's claims can survive summary judgment, however, the Defendant is not eligible for punitive damages. As such, the court dismisses Defendant's malice count.

meaning and intent of the language is disputed by the parties. (S.M.F. ¶ 3; O.S.M.F. ¶ 3.) Plaintiff Jayne Soules believed that the language meant that Knotty would be returned to Plaintiffs if Defendant could no longer keep Knotty, whereas Defendant was under the impression that the language meant that Plaintiffs had a right to re-obtain Knotty prior to the conveyance of Knotty to a third-party. (S.M.F. ¶ 3; O.S.M.F. ¶ 3.) It is disputed whether or not Plaintiffs continued to pay for Knotty's board up until ownership of Knotty transferred to Defendant. (S.M.F. ¶ 4.; O.S.M.F. ¶ 4.)

On September 25, 2013, Defendant called Plaintiff Jayne Soules and, along with relaying additional medical concerns, she stated that Knotty was having trouble getting back up on his feet from the ground and that she was concerned that he would freeze once the weather turned cold. (S.M.F. ¶ 5; O.S.M.F. ¶ 5.) Defendant also shared with Plaintiff Jayne Soules that she had decided that Knotty should be euthanized a few days later. (S.M.F. ¶ 5; O.S.M.F. ¶ 5.) On September 27th, Plaintiff Jayne Soules asked that Defendant return Knotty to her pursuant to the April 15th contract. (S.M.F. ¶ 6; O.S.M.F. ¶ 6.) Without explanation, Defendant refused to return Knotty to Plaintiffs. (S.M.F. ¶ 7; O.S.M.F. ¶ 7.)

On September 28, 2013, Plaintiff Daniel Soules proceeded to contact a *Lewiston Sun Journal* reporter to state that he felt Knotty's euthanization could be prevented through medical treatment at Plaintiffs' expense. (S.M.F. ¶ 8; O.S.M.F. ¶ 8.) While a September 28, 2013 article from the *Sun Journal* was attached to Plaintiffs' memorandum of law as Exhibit B, and an October 11, 2013 *Sun Journal* article was attached to Plaintiff's reply memorandum as Exhibit A, neither party cited to the articles in their statements of material facts. The content of the articles is the basis for the majority of the Counterclaim. Instead, Defendant has presented a series of statements that appear to attempt to refute the content of the articles. The statements are presented out of context without excerpts from the articles, but as the parties did not provide those excerpts the court cannot consider them as facts in this case. The following five assertions fall into this category:

- Defendant never stated to Plaintiffs that she had "sunk money into Knotty's care and there was just no other way." (A.S.M.F. ¶ 14.)
- It is untrue that there was nothing wrong with Knotty. (A.S.M.F. ¶ 15; R.S.M.F. ¶ 15.)
- Defendant did not want to kill Knotty. (A.S.M.F. ¶ 16; R.S.M.F. ¶ 16.)
- It is also untrue that Defendant's horse farm was not a safe location for Knotty. (A.S.M.F. ¶ 17.)
- Defendant did not intend to sell or kill Knotty for horsemeat. (A.S.M.F. ¶ 19.)

2

Due to concern that Knotty might be euthanized prior to a court decision on the enforceability of the right of first refusal provision, Plaintiffs asked that the court issue a temporary restraining order ("TRO"). (S.M.F. ¶ 9; O.S.M.F.¶ 9.) A TRO was issued on October 10, 2013. (S.M.F. ¶ 9; O.S.M.F. ¶ 9.)

Plaintiffs attached to the Complaint and request for an injunction, an affidavit from Plaintiff Jayne Soules stating the sole reason she could think of for Defendant refusing to return Knotty to Plaintiffs was that Defendant must be planning to sell Knotty for horsemeat. (S.M.F. ¶ 10; O.S.M.F. ¶ 10.)

Again, although not referenced in the statement of material facts, the court takes judicial notice that Dr. Thomas Judd, a veterinarian, was agreed to by the parties and appointed by the court to evaluate Knotty's condition. Based on Dr. Judd's report that Knotty did not appear to be terminally ill, the court subsequently granted Plaintiffs' request for a preliminary injunction, which served to stay the euthanization of Knotty. (S.M.F. ¶ 11; O.S.M.F. ¶ 11.) The court takes judicial notice of its December 5, 2013 Order, specifying, among other things, that Plaintiffs were to pay for Knotty's veterinary care pursuant to the Order. (S.M.F. ¶ 11; O.S.M.F. ¶ 11.) The court also takes judicial notice that on January 14, 2014, due to a decline in Knotty's health, the court vacated the Order.

As a result of the pending litigation and in accordance with the court's stay of Knotty's euthanization, Defendant was forced to make payments, incur expenses, and spend money on Knotty's treatment and care, even though she did not feel the payments were appropriate and necessary and she would not have made the payments if it had been up to her discretion. (A.S.M.F. ¶ 21.)

Finally, although Defendant has claimed severe emotional distress, in her interrogatory response, Defendant admitted that she had not received medical treatment for emotional distress. (S.M.F. ¶ 13; O.S.M.F. ¶¶ 13; A.S.M.F. ¶ 22; R.S.M.F. ¶ 22.)

Lastly, Defendant maintains that she loves horses and her business' success is contingent upon the community perceiving her as a horse lover. (A.S.M.F. ¶ 20; R.S.M.F. ¶ 20.)

II.    Standard of Review

"Summary judgment is appropriate when the record reveals no issues of material fact in dispute. A fact is material if it has the potential to affect the outcome of the case." *Lepage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629 (citations omitted).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*,

2001 ME 158, ¶ 7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757. If "a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶ 8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

When considering a Motion for Summary Judgment, this court must admit uncontroverted facts from the statement of material facts that are properly supported. M.R. Civ. P. 56(h)(4). This court cannot consider parts of the record that were not properly referenced in a statement of material facts. *See* M.R. Civ. P. 56(h)(4)(emphasis added) ("*The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.*"); *see also HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 17, 28 A.3d 1158.

### III. Discussion

As an initial matter, statements in affidavits asserted as "facts", which were actually legal argument or conclusions, have been disregarded. *See Diversified Foods, Inc. v. First Nat. Bank of Boston*, 605 A.2d 609, 612 (Me. 1992). A number of the assertions made by Defendant are not supported by factual evidence, but instead rely upon conclusory statements from Defendant that fail to prove her assertions. For example, Defendant stated that Plaintiffs' statements and communications were harmful to her reputation, business, and profession, implying she mistreated Knotty and intended to kill Knotty either without cause or for horsemeat, but Defendant provided no adequate factual basis for her assertions. (A.S.M.F. ¶ 21; Bosse Aff. ¶ 11.) Defendant has not presented sufficient evidence to support her claim that the statements were harmful, much less "devastating" to her business. (A.S.M.F. ¶ 21.) Defendant's statement that she suffered severe emotional distress as a result of Plaintiffs' actions is also inadequately supported.[1] (A.S.M.F. ¶ 22.) Furthermore, the majority of paragraph 23 of the additional statement of material facts consists of legal arguments and conclusions. Statements regarding whose obligation it was to pay for Knotty's upkeep, or who benefitted from the payments that were made, are conclusory. Defendant's affidavit, which makes the same legal arguments and conclusions, does not support the statement as "Conclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment." *Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985).

---

[1] See discussion below.

4

*a. Defamation*

Defendant's Counterclaim alleges a claim for slander, libel or defamation. From Defendant's Opposition, it appears that Defendant is pursuing a claim for defamation. Plaintiffs argue that the statements Defendant has excerpted in her Counterclaim do not constitute defamation.

In *Lester v. Powers*, the Law Court stated,

Common law defamation consists of:

(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

596 A.2d 65, 69 (Me. 1991) (quoting *Restatement (Second) of Torts* § 558 (1977)). "A statement is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Rippett v. Bemis*, 672 A.2d 82 (Me. 1996) (quoting *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990)). The Law Court explained "A defamation claim requires a statement-i.e. an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Lester*, 596 A.2d at 69.

The majority of Defendant's defamation claim cannot survive summary judgment, because Defendant failed to include the portions of the articles that she contends were defamatory in her additional statement of material facts. While Defendant's additional statement of material facts contains a list of statements framed in the negative to oppose claims from the articles, nowhere in her additional statement of material facts does Defendant include the original content that she is refuting. Stating that "Ms. Bosse never told the Counterclaim-Defendants that 'she'd sunk money into Knotty's care and there was just no other way'" is meaningless and does not advance her defamation claim, unless there is an actual statement of material fact referring to the original material to explain that the quoted statement was attributed to Defendant. (A.S.M.F. ¶ 15.) Similarly, without a citation to the original statement, stating that "Ms. Bosse never wanted to kill 'Knotty'", does not show that Plaintiffs asserted as much. The necessary bases for a defamation claim, the allegedly defamatory statements themselves, are completely missing from the statement of material facts. The statements also were not introduced through Plaintiffs' statement of material facts. Furthermore, Defendant never even cited to the articles to support what she contends the articles implied. (A.S.M.F. ¶ 21.) The closest Defendant gets to actually referencing the statements is when she states "The within statements and

5

communications were harmful to Ms. Bosse's reputation," but she never cites to the statements or provides what the "within statements" are. (A.S.M.F. ¶ 21.)

In her Counterclaim, Defendant set forth the following statements from a September 28, 2013 *Lewiston Sun-Journal* article as defamatory:

- "'Bosse told the Soules that she'd sunk money into Knotty's care and there was just no other way'";
- "'There's nothing wrong with that horse. They just won't let us take it back. They want to kill [Knotty]'" (alteration made in the Counterclaim);
- "'I'd like at least to get the horse somewhere safe, while this gets sorted out'";
- The Counterclaim also includes the statement that "Bosse won't honor the contract." This statement is not directly quoted from the article.
- "'The farm owner told him that he had fallen behind in his boarding payments, which may have nullified the contract.'"

(Def's Countercl. ¶5.) The Counterclaim also includes the following allegation from an October 11, 2013 article, which was not presented as a quote from the article:

- "That Ms. Bosse intended to sell/kill 'Knotty' for horse meat, by implication that she intended to maliciously and/or for profit harm or not adequately care for 'Knotty'."

(*Id.*) Only Plaintiff Jayne Soules' statement regarding horsemeat is actually discussed in the statement of material facts. (S.M.F. ¶ 10.) Plaintiffs mention the horsemeat statement made in Plaintiff Jayne Soules' affidavit attached to the Complaint. (*Id.*) The October 11, 2013 article is not cited to by either party. (*Id.*; O.S.M.F. ¶ 10.) Mrs. Soules' statement in her affidavit to the court was privileged. *See Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978). Defendant cannot sustain a defamation claim against Plaintiff Jayne Soules on the basis of that statement. The remainder of the allegedly defamatory statements were not included in the statement of material facts.

The Law Court has stated that when considering a motion for summary judgment:

we consider only the material facts set forth, and the portions of the record referred to, in the statements of material facts. In summary judgment practice, the court is neither required nor permitted to independently search a record to find support for facts offered by a party. A party's motion for summary judgment may not be granted if that party fails to properly put the material facts before the court, regardless of the adequacy, or inadequacy, of the nonmoving party's response.

*Gabay*, 2011 ME 101, ¶ 8, 28 A.3d 1158. (citations and quotation marks omitted).

In order to properly analyze Defendant's defamation claim, the court would have to independently examine the articles for the phrases that were not introduced as facts by either party. The court is not permitted to do so. *See Id.* The court shall not analyze the allegedly defamatory statements contained in the Counterclaim and memoranda, since they were not

6

presented as a part of the statement of material facts. *See* M.R. Civ. P. 56(h)(4). Accordingly, Defendant cannot survive summary judgment on her defamation claim.

### b. *Intentional or negligent infliction of emotional distress*

Defendant has also advanced claims for intentional and negligent infliction of emotional distress ("IIED" and "NIED"), both of which she has failed to properly support in her opposition to Plaintiffs' Motion.

In order to demonstrate IIED, a party must show:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it.

*Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979) (quotations and citations omitted). In IIED cases, the court must determine whether the conduct "'may reasonably be regarded as so extreme and outrageous to permit recovery . . . .'" *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (quoting *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me.1996)). The Law Court explained that "while the jury must determine whether the elements of the tort were in fact satisfied, the court must first determine whether, as a matter of law, the facts alleged are sufficient to satisfy the elements." *Id.*

In *Curtis v. Porter*, the Law Court noted that "the universe of those who may be liable in tort for the *negligent* infliction of emotional distress is much more limited" than for claims of IIED. 2001 ME 158, ¶ 17, 784 A2d 18 (emphasis in the original). To prove negligent infliction of emotional distress a plaintiff must demonstrate: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Id.* ¶ 18. The Law Court noted, however, that it is difficult for plaintiffs to establish duty, since "there is no . . . general duty to avoid negligently causing emotional harm to others." *Id.* The Law Court has, however,

> recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed. We have also held that a claim for negligent infliction of emotional distress may lie when the wrongdoer has committed another tort. However, as we have recently held, when the separate tort at issue allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress is usually subsumed in any award entered on the separate tort.

7

*Id.* ¶ 19. To prevail on a negligent infliction of emotional distress claim, a plaintiff must also show "proof of severe emotional distress." *Id.* ¶ 20.

Setting aside the issue of proof of the elements relating to Plaintiffs' conduct, both of Defendant's intentional infliction and negligent infliction claims fail because Defendant has not shown that she suffered emotional distress. Defendant's statement that she suffered severe emotional distress as a result of Plaintiffs' actions is only supported by her affidavit stating the same conclusion. (A.S.M.F. ¶ 22.) Nowhere, in her additional statement of material facts does Defendant describe the symptoms or impact of her emotional distress, or provide any factual evidence of said distress. (A.S.M.F. ¶ 22.) Defendant's statement "I have suffered severe emotional distress as a consequence of the action of the Soules" does not constitute proof that she has in fact suffered severe emotional distress that is actionable under either an IIED or NIED claim. (Bosse Aff. ¶ 12.) Accordingly, Defendant cannot prevail on either her IIED or NIED claims.

### c. Unjust enrichment

Defendant has also alleged unjust enrichment. To prevail on a claim for unjust enrichment, a party must show that "that it conferred a benefit on the other party ... that the other party had appreciation or knowledge of the benefit ... and ... that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Forrest Associates v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041 (quotation marks and citation omitted) (alterations in the original). Unjust enrichment claims exist when there is no actual contract, but when one party is legally and morally compelled to pay for value of the benefit. *Forrest Associates*, 2000 ME 195, ¶ 14, 760 A.2d 1041.

In this instance, Defendant cannot sustain a claim for unjust enrichment. Defendant owned Knotty and was, as a result, responsible for Knotty's care. Defendant argues that she was forced to keep Knotty alive against her wishes and against Knotty's best interest. While the court appreciates that Defendant had legitimate concerns about Knotty's long-term well being and did not wish to sustain Knotty's life, the court cannot say with certainty that waiting for an additional veterinary opinion prior to euthanasia was adverse to Knotty's best interest. Although Dr. Judd's findings after examining Knotty were not significantly different than the two previous veterinary exams, Dr. Judd determined that additional testing was advisable to ensure a proper diagnosis. He wrote "the absolute best thing to do for Knotty at this point would be to try treating him for both 'Lyme disease and supplementing Vitamin E' at [Ms. Bosse's farm]." Accordingly, terminating Knotty's life at that point was ill advised.

8

In light of the court's Order requiring Plaintiffs to be responsible for actual veterinary costs, Defendant's responsibility extended only to the normal costs of Knotty's upkeep for a relatively brief period of time. Any benefit that Plaintiffs derived was emotional at best, and not the type that would be "inequitable for [them] to retain . . . without payment of its value." *Forrest Associates*, 2000 ME 195, ¶ 14, 760 A.2d 1041.

Had Defendant's financial obligation become burdensome, she could have transferred ownership of Knotty back to Plaintiffs who would have then assumed Knotty's general expenses as well as veterinary costs. Accordingly, summary judgment is also granted to Plaintiffs on Defendant's claim for unjust enrichment.

### d. Rule 11 sanctions

Lastly, the court notes that Plaintiffs' counsel, Attorney Webber, has requested Rule 11 sanctions. Defendant's counsel, Attorney Van Dyke, has opposed the request for sanctions and has suggested that if any party deserves to be sanctioned, it is Attorney Webber. The court recognizes that the parties were emotionally invested in Knotty and were driven to do what was in Knotty's best interest for the remainder of his life, that the parties had different opinions about what was in Knotty's best interest, and that their disagreements became public and contentious. Nothing counsel has done in this case, however, merits Rule 11 sanctions. Therefore, the court finds that Rule 11 sanctions are not appropriate.

Accordingly, the court ORDERS that summary judgment is **GRANTED** in favor of Plaintiffs on Defendant's Counterclaim. Defendant's Counterclaim is dismissed.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 3/17/15

MaryGay Kennedy
Justice, Superior Court

9

Attorney for: JAYNE SOULES
CURTIS WEBBER  - RETAINED
LINNELL CHOATE & WEBBER LLP
83 PLEASANT STREET
PO BOX 190
AUBURN ME 04212-0190


DANIEL SOULES  - PLAINTIFF

**DOCKET RECORD**

Attorney for: DANIEL SOULES
CURTIS WEBBER  - RETAINED
LINNELL CHOATE & WEBBER LLP
83 PLEASANT STREET
PO BOX 190
AUBURN ME 04212-0190


vs
LISA BOSSE  - DEFENDANT

Attorney for: LISA BOSSE
DAVID J VAN DYKE  - RETAINED 10/10/2013
LYNCH & VAN DYKE PA
261 ASH ST
PO BOX 116
LEWISTON ME 04243-0116


Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 10/09/2013

## Docket Events:

10/09/2013 FILING DOCUMENT - COMPLAINT FILED ON 10/09/2013

10/09/2013 Party(s):  JAYNE SOULES
           ATTORNEY - RETAINED ENTERED ON 10/09/2013
           Plaintiff's Attorney: CURTIS WEBBER

           Party(s):  DANIEL SOULES
           ATTORNEY - RETAINED ENTERED ON 10/09/2013
           Plaintiff's Attorney: CURTIS WEBBER

10/09/2013 Party(s):  JAYNE SOULES,DANIEL SOULES
           MOTION - TEMP RESTRAINING ORDER FILED ON 10/09/2013
           WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

10/10/2013 Party(s):  JAYNE SOULES,DANIEL SOULES
           MOTION - TEMP RESTRAINING ORDER GRANTED ON 10/10/2013
           MARYGAY  KENNEDY , JUDGE
           COPIES TO PARTIES/COUNSEL

10/10/2013 HEARING - MOTION PRELIMINARY INJUNCTION SCHEDULED FOR 10/16/2013 at 01:30 p.m.

10/10/2013 Party(s):  LISA BOSSE