STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CIVIL ACTION
                                        DOCKET NO. CV-2016-147


STATE OF MAINE,
AARON M. FREY, ATTORNEY
GENERAL, BUREAU OF PARKS
AND LANDS, and LAND USE
PLANNING COMMISSION,
          Plaintiffs
                                                    **DECISION AND ORDER**

     V.

MOOSEHEAD MOUNTAIN
RESORT and OFLC, INC.,
          Defendants
     and
CARMEN REBOZO FOUNDATION,
INC.,
          Party-in-Interest

     and

PISCATAQUIS COUNTY COMMISSIONERS,
          Intervenors


## INTRODUCTION AND PROCEDURAL HISTORY

Before the court for resolution is the Motion for Summary Judgment filed by the Plaintiffs - the State of Maine, Attorney General Aaron Frey, the Bureau of Parks and Lands and the Land Use Planning Commission (hereinafter referred to as the State) - on Counts I, II, III and V of the complaint.[1]

---

[1] Count IV, alleging Breach of Contract, was previously withdrawn by the State. Count V, alleging Unjust Enrichment, has been pleaded in the alternative and need not be addressed by the court unless it rules against the State on Counts II and III.

This action was commenced by the State on August 1, 2016 with the filing of a five-count complaint seeking to enforce what are described as "deed restrictions" and "public servitudes" that allegedly burden the land of Defendant Moosehead Mountain Resort (MMR) on Big Moose Mountain (f/k/a Big Squaw Mountain) in Greenville. The land in question was formerly owned by the State of Maine and was conveyed to MMR's predecessor in title in 1986.

Count I alleges that MMR and Defendant OFLC, Inc., conducted timber harvesting within a General Development subdistrict without first obtaining a permit from the Land Use Planning Commission.

Count II alleges that MMR conducted timber harvesting in violation of certain deed restrictions applicable to the land owned by MMR, which were imposed for the benefit of the State of Maine.

Count III alleges that MMR has failed to comply with certain public servitudes imposed on the property owned by MMR, including that designated ski trails and lifts be subject to "continued public use."

Count V seeks damages on a theory of unjust enrichment.

In a Decision and Order dated May 7, 2018, the court denied MMR's motion for Summary Judgment as to Counts II, III and V. Many of the undisputed facts referred to in the court's prior Decision and Order are still undisputed for purposes of this motion for summary judgment. Oral argument on the Plaintiffs' Motion for Summary Judgment was held remotely on September 4, 2020.

## FACTUAL BACKGROUND

Big Moose Mountain (f/k/a Big Squaw Mountain) began operating as a ski resort in 1963. Scott Paper Company purchased the ski area in 1970 and operated it until approximately 1974. In late 1974, the ski area was transferred to the Moosehead Resort Corporation (MRC), which was wholly owned by the State of

2

Maine. In 1975, MRC conveyed the ski area to the State of Maine and the Bureau of Parks and Recreation (n/k/a Bureau of Parks and Lands).

The State of Maine owned the ski area for over ten years. In May 1986, a request for proposals was issued and advertised for the sale of the ski area and resort. Only one proposal was submitted, A proposal from the Big Squaw Mountain Corporation (BSMC) was the only one submitted. On October 17, 1986, then Governor Joseph E. Brennan approved Financial Order 04350 F6 authorizing the Director of the Bureau to convey the ski area and resort to BSMC. The "Statement of Fact" accompanying the Financial Order acknowledged that "[e]xtensive repair and improvements of the resort facility are necessary to keep it available to the public and assure its viability as an attractive and safe resort, benefiting the people of Maine."

The Financial Order described State policy at the time as recognizing that private capital was "the most appropriate and feasible means of assuring that the needed repairs and improvements are made in the future." Accordingly, it was deemed necessary that the property, including the ski area and resort, would be held in private ownership and that the State's conveyance of the property (and an option to purchase additional property) "is being done exclusively for public purposes."

The sale to BSMC involved the payment to the State of Maine of $300,000 (well below its market value at the time). The buyer (BSMC) was required to invest $700,000 in improvements to the facility. Moreover, the Financial Order provided:

> The resort and ski area will be sold with restrictions on timber harvesting to prevent waste, a requirement for continued public use of the ski area, and a restriction preventing subdivision and alienation of the shoreland parcel on Moosehead Lake from the resort property.

3

The Agreement to Purchase between the State of Maine and BSMC dated November 5, 1986 recited that the deed to the "Ski Area and Resort" would contain the "restrictions" referred to above. The Release Deed, also dated November 5, 1986, is at the center of this litigation. The deed emphasizes that the conveyances of the property and the options to BSMC were "done exclusively for public purposes." To drive home this point, the deed provides:

> Without limiting the definition of 'public purposes,' it is expressly understood that 'public purposes' shall include the maintenance, expansion, and operation of the Ski Area and Resort on the premises hereby conveyed, and the construction of transient accommodations and vacation homes for lease or sale.

The deed conveyed the land, buildings and improvements as described in Schedule A. The restrictions mentioned in the Financial Order and Agreement to Purchase were described in greater detail in the Release Deed as follows:

> Timber shall not be harvested from parcels FIRST and SECOND, hereby conveyed, except (1) where necessary for trails, lifts, snow-making facilities, construction of transient accommodations and vacation homes for lease or sale, and all related improvements, including roadways, serving the same and the Ski Area and resort, (2) for firewood or lumber for such resort and improvements, and (3) for the harvest of dead or dying timber and blowdowns.

> This conveyance is conditioned upon the continued public use of the Ski Area highlighted on attached Schedule B, which Ski area includes only the ski trails and lift lines in existence as of the date hereof and further listed on Schedule C hereof.

Schedule C listed a total of 17 ski trails and lift lines, designated A through Q. The lifts were described as: 3000' T-Bar (C); 2000' T-Bar (F); 6000' Double Chair Lift (N), and; Pony Lift (Q). The ski trails were designated by specific names.

4

It is significant to note that prior to the final conveyance of the property, and as part of the negotiations between the State and BSMC, the latter sought to have a provision included that "the restrictions will be removed if after ten years, use of the property as a ski area is deemed to be uneconomical to operate." *See Exhibt V to Vogel Affidavit.* This proposed provision was not accepted by the State.

At the time of the conveyance to BSMC, the State of Maine retained approximately 2 ¾ acres at the summit of Big Moose Mountain (the Summit Parcel), which abuts the Resort. Additional parcels of land were acquired by the State that comprise the Little Moose Unit of public reserved lauds. Together with the Summit Parcel, the Little Moose Unit constitutes a one-mile shared boundary with the Resort.

BSMC filed for bankruptcy in 1990. Fleet Bank foreclosed on the property and conveyed it to the Trustees of the Big Squaw Mountain Realty Trust. That deed of conveyance was virtually identical to the 1986 Release Deed and contained the restrictions and conditions set forth above. In 1995, the remaining Trustee of the Realty Trust conveyed the Resort to The Mountain, Inc., (now known as Moosehead Mountain Resort – MMR) for the sum of $500,000, also below its market value at the time. The 1995 deed to MMR is also virtually identical to the 1986 and 1990 deeds and restates in full the restrictions and conditions quoted above. MMR is owned 100% by James Confalone. OFLC, which owns property abutting the Resort, is owned by Mr. Confalone and his wife, Karen.

In 2004, the 1967 Stadeli double chair lift (N on Exhibit C) was taken out of service following an accident in which four people were injured. That double chairlift has not operated since. MMR has not replaced the lift serving the upper mountain trails. The lower mountain was also closed for a few seasons prior to

2013.[2] In 2006, MMR mortgaged the property to secure a $6,350,000 loan from Machias savings Bank (the MSB loan). Although the loan proceeds would have more than covered the cost of repairing or replacing the lift serving the upper mountain, the loan was primarily used to refinance prior indebtedness on OFLC property and the Resort and to pay other debts.

In 2010-2011, an agent acting on behalf of Mr. Confalone, retained a logging company to harvest timber on the property owned by OFLC. The stumpage value of the harvested timber was paid directly to Machias Savings Bank to make interest payments on the $6,350,000 loan. At least some of the timber harvested on OFLC property was harvested within the D-GN subdistrict without a permit from the Land Use Planning Commission. In addition, the logging company crossed the property line onto the Resort and harvested timber within a D-GN and M-GN subdistrict, also without a permit from the Commission. The areas where the timber was harvested on the Resort were within the parcels FIRST and SECOND as described in the 1986 and subsequent deeds. It is undisputed that the estimated mill value of the timber harvested within the D-GN subdistrict was $136, 277.64.

## DISCUSSION

Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted). A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact

---

[2] Since at least 2013, the Friends of the Mountain, a non-profit organization, have leased the Resort and have operated the lower mountain only on a limited basis. As a result, the condition of the lower mountain has improved. The condition of the upper mountain, however, has continued to deteriorate.

exists when the fact finder must choose between competing versions of the truth." *Id*. To withstand a motion for summary judgment, the non-moving party must present sufficient admissible evidence to establish a prima facie case for each element of the claim or defense. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

## COUNT I

The Land Use Planning Commission (Commission) is "the planning and zoning board for the unorganized areas and deorganized areas in the State." 12 M.R.S. §§ 681, 682(1), 683-A. The Commission has zoned the unorganized areas into varions zoning subdistricts and prescribed land use standards for each subdistrict. 12 M.R.S. § 685-A(1) & (3); 01-672 C.M.R. ch. 10. "A person may not commence any construction or operation of any development without a permit issued by the commission," except as otherwise provided by statute or rule. 12 M.R.S. § 685-B(1)(C). *See also* 12 M.R.S. § 682(7) (definition of development). Timber harvesting is a "development" that requires a permit in the D-GN subdistrict. 01-672 C.M.R. ch. 10, § 21(C)(3)(C)(22). Timber harvesting is defined to mean "[t]he cutting and removal of trees from their growing site, and the attendant operation of mobile or portable chipping mills and of cutting and skidding machinery, including the creation and use of skid trails, skid road, and winter haul roads, but not the construction or creation of land management roads." 01-672-C.M.R. ch. 10, § 2(207).

Mr. Confalone, as the landowner, and S.D.R. Logging as his designated agent, submitted a Forest Operations Notification (FON) to conduct a timber harvest from January 12, 2010 to January 12, 2012, on OFLC property abutting the Resort. According to the FON, Mr. Confalone and S.D.R. Logging did not propose to

7

harvest timber within the D-GN subdistrict on OFLC property.[3] In 2010 or 2011 S.D.R. Logging harvested timber within the D-GN subdistrict on OFLC property and within the D-GN subdistrict on the Resort. A permit was not obtained from the Commission to conduct such timber harvesting within the D-GN subdistrict on OFLC's property or on the Resort property. As a result, those timber harvesting activities violated 12 M.R.S. § 685-B(1)(C) and the Commission rules. As the landowners of the property on which the timber harvest occurred without the required permit, OFLC and MMR are liable for those statutory and rule violations. The Affidavit of Debra Kaczowski establishes the Plaintiffs' entitlement to summary judgment on this count of the complaint. The Defendants have not generated a genuine issue of material fact that they have violated state law and Commission rules by conducting timber harvesting in the G-NP subdistrict without a permit.

The Plaintiffs are entitled to summary judgment on Count I of the complaint. Title 12 M.R.S. § 685-C(8) provides for a civil penalty payable to the State "of not more than $10,000 for each day of violation." The summary judgment record is not sufficient, however, for the court to determine how many days of violation occurred with the timber harvesting within the D-GN subdistrict as alleged in Count I, or what amount the State is seeking as a penalty. A further hearing will be necessary for the court to determine the appropriate civil penalty.

## COUNTS II AND III

The State Plaintiffs have argued that the deed restrictions at issue here may be enforced against MMR as covenants in gross, covenants appurtenant and/or as

---

[3] There is a mystery of sorts surrounding the FON. Question 16(a) on the FON asks for a list of the zones where harvesting will occur. D-GN is included in the zones to harvested, but it was crossed out and the words "remove D-GN" written above the box. The summary judgment record provides no evidence as to who made the cross-out or who wrote the "remove D-GN" language. Regardless of who made these changes in the FON, no evidence was presented that any permit was obtained to allow harvesting in the D-GN subdistrict.

8

equitable servitudes. A covenant in gross "means that the benefit or burden of a servitude is not tied to ownership or occupancy of a particular unit or parcel of land."[4] *Lynch v. Town of Pelham*, 104 A.3d 1047, 1053 (N.H. 2014). The State Plaintiffs acknowledge that, historically, there had to be a benefiting parcel in order for a covenant to be enforced at law against the burdened parcel. Moreover, all parties seem to agree that whether a covenant in gross can "run with the land" where the benefit is personal (non-transferable), is a question of first impression in Maine.[5] *See Andersen v. Bangor Hydro-Electric Company, supra.*

On this issue, the State Plaintiffs point out that the modern and better view is that the common law requirement that there must be an abutting, benefitted parcel in order to enforce deed restrictions, is arbitrary, obsolete and of little practical value today. *See Restatement (Third) of Property: Servitudes §2.6, Reporter's Notes and Comments.* Moreover, the Plaintiffs emphasize that even if the common law requirement of an abutting parcel is still viable generally, it has no applicability to the sovereign. *Restatement (Third) of Property: Servitudes §2.18. Cf. Bennett v. Commissioner of Food & Agriculture*, 576 N.E.2d 1365, 1366 (Mass. 1991) ("Where the beneficiary of the restriction is the public and the restriction reinforces a legislatively stated public purpose, old common law rules barring the creation and enforcement of easements in gross have no continuing force."). In the court's view, the common law requirement that there be an abutting, benefitted parcel in order for a covenant in gross to run with the land, makes no sense when the State is acting to

---

[4] A covenant appurtenant, by contrast, exists where the rights and obligations of the servitude are tied to a particular parcel or unit of land. *Lynch v. Town of Pelham*, 104 A.3d at 1053.

[5] In *Stickney v. City of Saco*, 2001 ME 69, ¶ 32, 770 A.2d 592 the Law Court noted that an easement in gross is a personal right and generally terminates upon the death of the individual for whom it was created. In *Lynch v. Town of Pelham, supra* the court indicated that a covenant in gross can be either personal or could run with the land, meaning it passes automatically to successors.

impress on land it formerly owned public servitudes and covenants that are designed to benefit the public indefinitely.[6]

"For the burden of a restrictive covenant to run at law the covenant must (1) touch and concern the land; (2) be intended to run by the original parties; and (3) there must be privity of estate." *Anderson v. Bangor Hydr-Elec. Co.* 2012 WL 10467424, at *2 (Me. Super. Ct) (09/21/2012) (Andersou, J.). As observed in *Stern v. Metro. Water Dist. of Salt Lake & Sandy*, 274 P.3d 935, 947 (Ut. 2012), to touch and concern the land means that the covenants "must be of such character that [their] performance or nonperformance will so affect the use, value, or enjoyment of the land itself that it must be regarded as an integral part of the property." (citation omitted). The deed restrictious at issue here meet that standard because they limit the use of the property and affect its market value, among other things. The element that there must be privity of estate is also satisfied here because MMR is the successor-in-interest of BSMC and took ownership of the property subject to the same deed restrictions.

Moreover, it is clear from the 1986 deed and the Financial Order authorizing the sale of the Resort that the State and BSMC intended the deed restrictions to run with the land. The deed restrictions, which use the passive voice and do not reference BSMC, were intended to fulfill the requirements of the Financial Order preventing waste of the property's timber resources and ensuring that the specifically identified ski rails and lift lines wonld remain available for public use. Those pnrposes could not be achieved if the deed restrictions were merely personal to BSMC. Even if there were some ambiguity in the intent of the State and BSMC that the restrictions were to run with the land, any ambiguity should be resolved in favor

---

[*] Nevertheless, the State Plaintiffs contend that if the State is required to have an abutting, benefitted parcel in order to enforce the deed restrictions, it does in fact own such a parcel, namely, the Summit Parcel. The court agrees.

of the State. *Great Cove Boat Club v. Bureau of Public Lands*, 672 A.2d 91, 94 (Me. 1996) (public grants are "strictly construed" against the grantee); *Cushing v. State*, 434 A.2d 486, 500 (Me. 1981). *See also Home for Aged Women v. Commonwealth*, 89 N.E. 124, 129 (Mass. 1909).

The language of the public use restrictions in the deeds conveying the Resort to the State, coupled with the 1986 RFP, the purchase agreement, the financial order, internal State communications and communications between BSMC and the State – particularly BSMC's request (rejected by the State) that the public use restrictions be limited to ten years – reinforce the language of the deed itself, namely, the State and BSMC intended the timber harvesting restriction and the public use restriction to run with the land and to last indefinitely. Because the State may create enforceable covenants in gross, and because the summary judgment record establishes that the timber harvesting and public use restrictions touch and concern the Resort, were intended by the State and BSMC to run with the land, and that privity of estate exists, the deed restrictions are enforceable against MMR at law.

The deed restrictions are also enforceable in equity because the restrictions: (1) touch and concern the land; (2) were intended to run with the land by the original parties, and; (3) the successor-in-interest (MMR) to the burdened land had notice of the restrictions. *See Anderson*, 2012 WL 10467424, *3. Moreover, the deed restrictions are reasonable. *See Dale Henderson Logging, Inc.*, 2012 ME 99, ¶ 27, 48 A.3d 233. The restrictions are reasonable because: they do not require maintenance or operation of the hotel; they do not require any additional ski trails or lifts; they do not require that public access be free of charge, and; they permit timber harvesting for specified reasons and purposes related to the operation of the Ski Area and the Resort.

Finally, the summary judgment record establishes that MMR has breached the timber harvesting and public use restrictions. During 2010-2011, timber was

11

harvested from several distinct areas on the Resort property, each of which was within parcel FIRST and/or SECOND as those parcels are described in the 1986 and 1995 deeds. Accordingly, and because the summary judgment record does not establish that the timber harvesting that was done fell within one or more of the exceptions to the timber harvesting restrictions, the State is entitled to summary judgment on Count II of the complaint. *See Androkites v. White*, 2010 ME 133, ¶ 19, 10 A.3d 677 ("[I]n a civil case, the party to a proceeding who has better access to information and is seeking the benefit or protection of a law has the burden of proof on that point.").

Regarding the public use restrictions, the lift serving the upper mountain has not operated since 2004, nor has it been replaced with another lift serving the upper mountain trails as delineated and depicted in Exhibits B and C to the 1986 deed and in subsequent deeds. The lower mountain was closed for several seasons prior to 2013, at which time the non-profit Friends of the Mountain began operating the lower mountain only on a limited basis. Such use, particularly the complete closure of the upper mountain, falls short of providing the public continued access to the trails and lift lines expressly depicted in Exhibits B and C to the deed. As a result, the State is entitled to summary judgment on Count III of the complaint.

## WAIVER, LACK OF DEMAND AND LACHES

MMR has raised the defense of waiver, claiming that the State waived its right to sue to enforce the deed restrictions by not rigorously enforcing them against prior owners of the Resort. This argument is unconvincing. First, the defense of waiver was not raised as a defense in MMR's answer. Second, waiver requires a clear and unequivocal abandonment. Here, the fact that the State allowed time to pass to permit MMR to voluntarily come into compliance with the deed restrictions does not establish a waiver.

12

Next, MMR claims that the State was required to make a demand upon it to comply with the deed restrictions prior to commencing suit. These restrictions are public use restrictions and, as such, the right of the State to seek to enforce them is not dependent on a formal demand.

Finally, MMR asserts the equitable defense of laches. The Law Court has recently reaffirmed that "[l]aches cannot be predicated on passage of time alone." *Quirk v. Quirk*, 2020 ME 132, ¶ 12, ___A.3d ___. The delay must be unreasonable and unexplained. Moreover, there must be a showing of prejudice to the adverse party and it must be inequitable to enforce the right. The passage of time involved here is not unreasonable when it comes to the enforcement of public use restrictions. Moreover, MMR has not shown that it has been prejudiced in any way.

## REMEDIES

Summary judgment will be granted to the State Plaintiffs on Counts I, II and III of the complaint. Since Count V (Unjust Enrichment) was pled in the alternative to Counts II and III, it is now moot.

As to Count I, the court finds that MMR and OFLC, Inc. engaged in timber harvesting within D-GN subdistricts without a permit from the Land Use Planning Commission in violation of 12 M.R.S. § 685-B(1)(C). A further hearing is necessary for the court to determine the appropriate civil penalty pursuant to 12 M.R.S. § 685-C(8).

As to Count II, the court declares that MMR violated the timber harvesting deed restrictions and the State is entitled to the estimated mill value of the timber harvested in violation of those deed restrictions, namely, $136,277.64.

As to Count III, the court declares that MMR is in violation of the public use deed restrictions. The State Plaintiffs have requested the court to order MMR to pay into an escrow account, administered by the State, an amount sufficient to bring the Resort into compliance with the public use restrictions, and to post a performance

13

bond of $1,000,000 conditioned upon MMR bringing the Resort into compliance with the public use restrictions. An additional hearing will be necessary for the court to receive evidence and information from the parties as to the appropriate amount to be deposited into an escrow account and the size of any performance bond to be posted by MMR.

## CONCLUSION

The entry is:

Plaintiffs' Motion for Summary judgment as to Counts I, II and III of the complaint is GRANTED. Count V of the complaint is MOOT.

The Clerk shall consult with counsel for the parties and shall schedule a hearing, via video, to address: (a) the amount of any civil penalty under Count I, and (b) the amount MMR will be required to deposit into an escrow account and the size of any performance bond to be posted by MMR.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R. Civ. P. 79(a).

Date: November 17, 2020

Entered on the docket 11/17/2020

William R. Stokes
Justice, Superior Court

14

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2016-147

STATE OF MAINE,
JANET T. MILLS, ATTORNEY
GENERAL, BUREAU OF PARKS
AND LANDS, and LAND USE
PLANNING COMMISSION,
        Plaintiffs

V.

MOOSEHEAD MOUNTAIN
RESORT and OFLC, INC.,
        Defendants
    and
CARMEN REBOZO FOUNDATION,
INC.,
        Party-in-Interest

**DECISION AND ORDER**

# INTRODUCTION

This matter is before the court on the motions of Defendant Moosehead Mountain Resort (MMR) for judgment on the pleadings and for summary judgment as to Counts II, III, IV and V of the complaint. Party-in-Interest Carmen Rebozo Foundation, Inc., has joined in the motion for summary judgment. The Plaintiffs have informed the court that they are no longer pursuing Count IV of the complaint alleging breach of contract, and the court considers this cause of action withdrawn.

This action was commenced by the Plaintiffs[1] on August 1, 2016 with the filing of a five-count complaint seeking to enforce what are described as "deed restrictions" and "public servitudes" that allegedly burden the land of MMR on Big Moose Mountain (f/k/a Big Squaw Mountain) in Greenville. The land in question was formerly owned by the State of Maine and was conveyed to MMR's predecessor in title in 1986. The complaint also seeks monetary damages.

Count I alleges that Defendants MMR and OFLC, Inc., conducted timber harvesting within a General Development subdistrict without first obtaining a permit from the Land Use Planning Commission. Count I is not included in MMR's motions.

Count II alleges that MMR conducted timber harvesting in violation of certain deed restrictions applicable to the land owned by MMR, which were imposed for the benefit of the State of Maine.

Count III alleges that MMR has failed to comply with certain public servitudes imposed on the property owned by MMR, including that designated ski trails and lifts be subject to "continued public use."

Count V seeks damages on a theory of unjust enrichment.

---

[1] The Plaintiffs are the State of Maine, the Attorney General for the State of Maine, the Bureau of Parks and Lands, and the Land Use Planning Commission.

2

MMR filed a timely answer and counterclaim on August 25, 2016. In its counterclaim MMR alleges that the deed restrictions do not apply to it because they "do not run with the land."

On December 27, 2017, MMR moved for summary judgment and for judgment on the pleadings.[2] The Plaintiffs filed their opposition on February 28, 2018. Amicus Curiae Town of Greenville and Moosehead Lake Region Economic Development Corporation filed their joint opposition brief on March 26, 2018. MMR's reply was filed on April 5, 2018. Oral argument on the motions was held on April 6, 2018.

## FACTUAL BACKGROUND

The following undisputed factual description is based upon the summary judgment record.

Big Moose Mountain (f/k/a Big Squaw Mountain) began operating as a ski resort in 1963. Scott Paper Company purchased the ski area in 1970 and operated it until approximately 1974. In late 1974 the ski area was transferred to the Moosehead Resort Corporation (MRC), which was wholly owned by the State of Maine. In 1975 MRC conveyed the ski area to the State of Maine and the Bureau of Parks and Recreation (n/k/a Bureau of Parks and Lands).

---

[2] Since matters outside the pleadings were presented and not excluded by the court, the motion for judgment on the pleadings will be treated as one for summary judgment. M.R.Civ.P. 12(c).

The State of Maine owned the ski area for over ten years. In May 1986 a request for proposals was issued and advertised for the sale of the ski area and resort. Only one proposal was submitted, from the Big Squaw Mountain Corporation (BSMC). On October 17, 1986 then Governor Joseph E. Brennan approved Financial Order 04350 F6 authorizing the Director of the Bureau to convey the ski area and resort to BSMC. The "Statement of Fact" accompanying the Financial Order acknowledged that "[e]xtensive repair and improvements of the resort facility are necessary to keep it available to the public and assure its viability as an attractive and safe resort, benefiting the people of Maine."

The Financial Order described State policy at the time as recognizing that private capital was "the most appropriate and feasible means of assuring that the needed repairs and improvements are made in the future." Accordingly, it was deemed necessary that the property, including the ski area and resort, would be held in private ownership and that the State's conveyance of the property (and an option to purchase additional property) "is being done exclusively for public purposes."

The sale to BSMC involved the payment to the State of Maine of $300,000 (well below its market value at the time of between $3.5 million to $4 million). The buyer (BSMC) was required to invest $700,000 in improvements to the facility. Moreover, the Financial Order provided:

> The resort and ski area will be sold with restrictions on timber harvesting to prevent waste, a requirement for continued public use of

4

the ski area, and a restriction preventing subdivision and alienation of the shoreland parcel on Moosehead Lake from the resort property.

The Agreement to Purchase between the State of Maine and BSMC dated November 5, 1986 recited that the deed to the "Ski Area and Resort" would contain the "restrictions" referred to above. The Release Deed, also dated November 5, 1986, is at the center of this litigation. The deed emphasizes that the conveyances of the property and the options to BSMC were "done exclusively for public purposes." To drive home this point, the deed provides:

> Without limiting the definition of 'public purposes,' it is expressly understood that 'public purposes' shall include the maintenance, expansion, and operation of the Ski Area and Resort on the premises hereby conveyed, and the construction of transient accommodations and vacation homes for lease or sale.

The deed conveyed the land, buildings and improvements as described in Schedule A. The restrictions mentioned in the Financial Order and Agreement to Purchase were described in greater detail in the Release Deed as follows:

> Timber shall not be harvested from parcels FIRST and SECOND, hereby conveyed, except (1)where necessary for trails, lifts, snow-making facilities, construction of transient accommodations and vacation homes for lease or sale, and all related improvements, including roadways, serving the same and the Ski Area and resort, (2) for firewood or lumber for such resort and improvements, and (3) for the harvest of dead or dying timber and blowdowns.

> This conveyance is conditioned upon the continued public use of the Ski Area highlighted on attached Schedule B, which Ski area includes only the ski trails and lift lines in existence as of the date hereof and further listed on Schedule C hereof.

5

Schedule C lists 17 ski trails and lift lines.[3]

It is undisputed that at the time of the conveyance to BSMC, the State of Maine retained approximately 2 ¾ acres at the summit of Big Moose Mountain (the Summit Parcel), which abuts the Resort. Additional parcels of land were acquired by the State that comprise the Little Moose Unit of public reserved lands. Together with the Summit Parcel, the Little Moose Unit constitutes a one-mile shared boundary with the Resort.

BSMC filed for bankruptcy in 1990. Fleet Bank foreclosed on the property and conveyed it to the Trustees of the Big Squaw Mountain Realty Trust. That deed of conveyance was virtually identical to the 1986 Release Deed and contained the restrictions and conditions set forth above. In 1995, the remaining Trustee of the Realty Trust conveyed the Resort to The Mountain, Inc., (now known as Moosehead Mountain Resort – MMR) for the sum of $500,000, below its market value of $1.1 million to 1.5 million. The 1995 deed to MMR is also virtually identical to the 1986 and 1990 deeds and restate in full the restrictions and conditions quoted above.

The parties agree that when MMR purchased the property in 1995 it had four (4) lifts operating with trails covering 200 acres, with an operational snowmaking system. In 2001, however, the hotel was closed and in 2004 the 1967 Stadeli double

---

[3] There are other conditions in the Release Deed that pertain to parcel FOURTH, but they are not the subject of the pending motions.

chair lift was taken out of service following an accident in which four people were injured. That double chairlift has not operated since. Virtually all of the equipment has been liquidated and there is little equipment to perform summer maintenance. The trails on the upper mountain have not been maintained since 2004. The pony tow has also not operated in years.

There is a factual dispute as to whether the Defendant – MMR – harvested timber on property subject to the timber harvesting restrictions.

## DISCUSSION

The Plaintiffs and amici curiae contend that MMR has failed to comply with the restrictions and conditions in the Release Deed and all subsequent deeds that (1) require "the continued public use of the Ski Area" as defined and (2) prohibit timber harvesting on certain conveyed parcels except in limited circumstances. MMR maintains that the restrictions and conditions of the Release Deed of 1986 are ineffective, as a matter of law, to bind it because they do not and were not intended to "run with the land," and do not satisfy the technical requirements for having restrictive covenants enforceable against a subsequent owner of the property who was not an original party to the purchase and sale and conveyance. Accordingly, MMR seeks summary judgment as to Counts II and III of the complaint. MMR also seeks summary judgment as to Count V (unjust enrichment) because, it claims, the

7

State of Maine never conferred a benefit upon it, an essential element of an unjust enrichment cause of action.

Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted). A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* To withstand a motion for summary judgment, the non-moving party must present sufficient admissible evidence to establish a prima facie case for each element of the claim or defense. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

## A. Counts II and III

With respect to Counts II and III of the complaint MMR argues that it is entitled to judgment as a matter of law because there is no dominant <u>and</u> servient parcel of land that is benefitted and burdened by the restrictive covenants. In advancing this argument MMR is relying upon a traditional view of the law as explained in *Brown v. Heirs of Fuller*, 347 A.2d 127 (Me. 1975).

8

In *Brown* the decedent, Maria Fuller, devised land in Augusta subject to the restrictions that it remain residential and that no structure be built that was materially higher than the buildings in existence at the time of her death in 1936. By a series of conveyances, the property passed to the plaintiff, Brown, who wanted to operate commercial enterprises on the land. In finding that the restrictions were ineffective, the Law Court stated:

> It has long been thought contrary to public policy, however, to enforce as an equitable servitude a restriction imposed for the benefit of land in which, at the time of the origin of the restriction, the person creating it lacks a legally cognizable interest

Since Maria Fuller did not retain any land that was benefitted by the conditions in her will, the restrictive covenants could not be enforced against the subsequent owner of the property. In relying on *Brown v. Heirs of Fuller*, MMR is arguing that the restrictions and conditions in the 1986, 1990 and 1995 deeds were unenforceable from their inception because they did not satisfy the technical requirements for a restrictive covenant to "run with the land" and be enforceable against it as a subsequent owner of the property.

"For the burden of a restrictive covenant to run at law[4] the covenant must (1) touch and concern the land; (2) be intended to run by the original parties; and (3)

---

[4] A covenant that is enforceable at law allows for the award of money damages, as opposed to a covenant that is enforceable at equity but does not permit the awarding of money damages. The latter are referred to as equitable servitudes. *See Lane v. Derocher*, 360 A.2d 141, 143 (Me. 1976).

there must be privity of estate." *Andersen v. Bangor Hydro-Electric Company*, 2012 WL 10467424 *2 (September 21, 2012) (Anderson, J) *citing* 9 Powell on Real Property §60:04(2). MMR maintains that the State does not meet all of these requirements because the State does not own or have a possessory interest in a parcel of land that is benefitted by the restrictive covenants and, therefore, the covenants do not "touch and concern" the land and there is no privity of estate.

The Plaintiffs respond by asserting that there are disputed issues of material fact that preclude the granting of summary judgment in MMR's favor. The Plaintiffs contend that, at a minimum, there are factual issues as to whether the deed restrictions qualify as: (1) a conservation easement pursuant to 33 M.R.S. §§476 *et seq;* (2) a covenant in gross; (3) a covenant appurtenant, or; (4) an equitable servitude.

In their opposition to the summary judgment motion the Plaintiffs, for the first time, raised the issue that the deed restrictions constituted a conservation easement. Title 33 M.R.S. §476(1) defines a "conservation easement" as

> . . . a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations the purposes of which include retaining or protecting natural, scenic or open space values of real property; assuring its availability for agricultural, forest, recreational or open space use; protecting natural resources; or maintaining or enhancing air or water quality of real property.

A governmental body can be a holder of a conservation easement. 33 M.R.S. §476(2)(A). It can be created in the same manner as other easements are created by

10

means of a written instrument. 33 M.R.S. §477(1). It can be judicially enforced and both equitable relief and damages may be awarded.[5] 33 M.R.S. §478(3). By law, a conservation easement is valid notwithstanding the fact that: (a) it does not run with the land; (b) it is not recognized in common law; (c) it does not touch or concern the land, or; (d) there is no privity of estate. 33 M.R.S. §§479(1), (3), (6) & (7). Finally, the statutory scheme regarding conservation easements, which was enacted in 1985, "applies to any interest created after its effective date which complies with this subchapter, whether designated as a conservation easement or as a covenant, equitable servitude, restriction, easement or otherwise." 33 M.R.S. §479-A(1).

In view of the foregoing, the Plaintiffs assert that summary judgment cannot be granted to MMR because a genuine issue exists as to whether the deed restrictions constitute conservation easements. MMR appears to agree. *See MMR Reply Memorandum* at 5-7.

In addition, the Plaintiffs have argued that the deed restrictions at issue here may be enforced against MMR as covenants in gross, covenants appurtenant and/or equitable servitudes.

---

[5] In a previous order, the court denied the Town of Greenville's request to intervene in this matter. At that time, however, none of the participants raised the issue that the deed restrictions involved here might qualify as a conservation easement under Title 33. The law on conservation easements has a provision specifically addressing the permissive intervention of a political subdivision of the State in an action affecting a conservation easement. 33 M.R.S. §478(2).

A covenant in gross "means that the benefit or burden of a servitude is not tied to ownership or occupancy of a particular unit or parcel of land."[6] *Lynch v. Town of Pelham*, 104 A.3d 1047, 1053 (N.H. 2014). The Plaintiffs acknowledge that, historically, there had to be a benefiting parcel in order for a covenant to be enforced at law against the burdened parcel. *See Plaintiffs' Opposition to Summary Judgment* at 10. Moreover, all parties seem to agree that whether a covenant in gross can "run with the land" where the benefit is personal (non-transferable), is a question of first impression in Maine.[7] *See Andersen v. Bangor Hydro-Electric Company, supra.*

On this issue, the Plaintiffs point out that the modern and better view is that the common law requirement that there must be an abutting, benefitted parcel in order to enforce deed restrictions, is arbitrary, obsolete and of little practical value today. *See Restatement (Third) of Property: Servitudes §2.6, Reporter's Notes and Comments.* Moreover, the Plaintiffs emphasize that even if the common law requirement of an abutting parcel is still viable generally, it has no applicability to the sovereign. *Restatement (Third) of Property: Servitudes §2.18. Cf. Bennett v. Commissioner of Food & Agriculture*, 576 N.E.2d 1365, 1366 (Mass. 1991) ("Where

---

[6] A covenant appurtenant, by contrast, exists where the rights and obligations of the servitude are tied to a particular parcel or unit of land. *Lynch v. Town of Pelham*, 104 A.3d at 1053.

[7] In *Stickney v. City of Saco*, 2001 ME 69, ¶ 32, 770 A.2d 592 the Law Court noted that an easement in gross is a personal right and generally terminates upon the death of the individual for whom it was created. In *Lynch v. Town of Pelham, supra* the court indicated that a covenant in gross can be either personal or could run with the land, meaning it passes automatically to successors.

12

the beneficiary of the restriction is the public and the restriction reinforces a legislatively stated public purpose, old common law rules barring the creation and enforcement of easements in gross have no continuing force.").

Alternatively, or perhaps additionally, the Plaintiffs contend that if the State is required to have an abutting, benefitted parcel of land in order to enforce the deed restrictions, it does in fact own such a parcel, namely, the Summit Parcel. Accordingly, the Plaintiffs contend that the deed restrictions qualify as covenants appurtenant. MMR, on the other hand, claims that simply owning a nearby lot is insufficient to satisfy the "benefit and burden"/ "touch and concern" requirement. *MMR's reply* at 12.

Finally, the Plaintiffs allege that the deed restrictions are enforceable as equitable servitudes that may be enforced as a matter of equity since they (1) touch and concern the land, (2) were intended to run with the land by the original parties, and (3) the successor-in-interest (MMR) to the burdened land had notice of the restrictions. *See Andersen*, 2012 WL 10467424, at *3. The Plaintiffs also maintain that the deed restrictions are reasonable. *See Dale Henderson Logging, Inc. v. MDOT*, 2012 ME 99, ¶ 27, 48 A.3d 233.

For its part, MMR insists that the Plaintiffs cannot meet the "touch and concern" element because it does not own an abutting parcel that was intended to be benefited by the restrictions.

13

The court concludes that there are genuine issues of material fact that remain unresolved at this stage of the litigation such that summary judgment cannot be granted to MMR on Counts II and III.

As noted above, the Plaintiffs and MMR appear to be in agreement that the Plaintiffs' claim that the deed restrictions constitute conservation easements is one that survives MMR's summary judgment challenge.

Whether the deed restrictions also qualify as a covenant in gross that "runs with the land" cannot be resolved on summary judgment either. It is an open question whether the common law requirements normally applicable to covenants in gross should be imposed upon the State when it purports to create public servitudes on land it has conveyed for public purposes. In this court's view, they should not. MMR insists that "touch and concern" requires an abutting, benefitted parcel. But that requirement makes no sense when the State is acting to impress on land it formerly owned public servitudes and covenants that are designed to benefit the public indefinitely. As noted in *Stern v. Metro. Water Dist. of Salt Lake & Sandy*, 274 P.3d 935, 947 (Ut. 2012), to touch and concern the land means that the covenants "must 'be of such character that [their] performance or nonperformance will so affect the use, value, or enjoyment of the land itself that it must be regarded as an integral part of the property.'" (citation omitted). The deed restrictions at issue here would seem to meet that standard. The element that there must be privity of estate may be

14

satisfied here because MMR is the successor-in-interest of BSMC and took ownership of the property subject to the same deed restrictions. The requirement that the original parties intended the deed restrictions to run with the land raises a question of fact that cannot be determined on summary judgment.[8]

The same conclusion applies as to whether the deed restrictions are covenants appurtenant or equitable servitudes. Assuming the State needs an abutting, benefitted parcel, there is a question of fact whether the Summit Parcel and the Little Moose Unit satisfy that need. Moreover, the intent of the original parties that the deed restrictions run with the land and be enforceable against successors-in-interest is a factual question.

On the question of the parties' intent, MMR points to the language in the Release Deed specifying that: "This conveyance is conditioned upon the continued public use of the Ski Area . . . ." MMR contends that this language shows that the deed restrictions were limited to the transaction between the State of Maine and BSMC in 1986 and were not intended to run with the land. Although it is true that the Release Deed did not use the phrase "run with the land" or similar language in describing the deed restrictions, that is not controlling or determinative. *Stickney v.*

---

[8] MMR argues that if the court is inclined to recognize covenants in gross, it should apply the same rule that applies to easements in gross as articulated in *Sabattus v. Bilodeau*, 391 A.2d 357 (Me. 1978). That case, however, is distinguishable. In *Sabattus* the town had the right, but not the duty, to maintain and repair a dam. Here, it is at least arguable that the deed restrictions require MMR to do what is necessary to maintain the "Ski Area" as defined for "continued public use."

15

*City of Saco,* 2001 ME 69, ¶ 36. The ultimate goal is to give effect to the intent of the original parties. The use of the phrase "this conveyance" is ambiguous and, therefore, extrinsic evidence of the parties' intent may be considered. Based on the summary judgment record, the court cannot say, as a matter of law, that the intent of the parties was to limit the deed restrictions to the singular transaction between the State and BSMC in 1986.

One additional aspect of MMR's summary judgment motion must be addressed. In Count III of the complaint (¶ 81) the Plaintiffs have alleged that MMR has violated the public servitudes that burden the property in question by, among other things, failing "to maintain, repair and operate the resort's hotel, base lodge, ski area, and ski lift that serves the upper portion of Moose Mountain."

MMR asserts that, as a matter of law, whatever deed restrictions are enforceable against it do not include the obligation to maintain, repair and/or operate the resort, a hotel or the base lodge. Rather, MMR contends that the deed restrictions are limited to the prohibition against timber harvesting (except for the allowable purposes) and "the continued public use of the Ski Area highlighted on attached Schedule B, which Ski area includes only the ski trails and lift lines in existence as of the date hereof and further listed on Schedule C hereof."

In its opposition to the summary judgment motion, and during oral argument, the Plaintiffs did not disagree with MMR's position on this issue. It appears clear to

16

the court that the deed restrictions/conditions do not include the obligation to maintain, repair and operate the Resort, the resort hotel or the base lodge. Maintenance of the Resort and the construction of transient accommodations and vacation homes for lease or sale, were expressly declared to be "public purposes" permitting the conveyance of State-owned property to a private owner at a below market price. But those activities were not included in the deed restrictions/conditions that are arguably enforceable against MMR. Since there is no genuine issue of material fact on this issue and MMR is entitled judgment as a matter of law on this point, summary judgment will be granted to the extent that the deed restrictions/conditions in the Release Deed do not include the obligation to maintain, repair or operate the Resort, resort hotel or the base lodge. In all other respects the motion for summary judgment as to Counts II and III will be denied.

## B. Count V (Unjust Enrichment)

To prevail on a claim for unjust enrichment a plaintiff must show that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit and; (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14. Unjust enrichment permits recovery for the value of the benefit conferred "when, on

the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay. . . ." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6.

As the Plaintiffs recognize, its unjust enrichment claim only becomes meaningful if it fails on its claims under Counts II and III. Nevertheless, MMR argues that it is entitled to summary judgment on Count V because the State did not confer any benefit on it.

Summary judgment on Count V is not appropriate at this point in the case. Whether the State conferred a benefit on MMR and what that benefit was, are questions of fact. Given the unique nature of the property and the public purposes for which it was conveyed, it is a question of fact whether MMR's subsequent purchase of the property with knowledge of the potential public servitudes on it, constitutes a benefit. Moreover, it is a question of fact as to whether it is inequitable for MMR to retain the benefit, while not complying with the public servitudes, without payment for the value of the benefit conferred. Because there remain genuine issues of material fact with respect to the unjust enrichment cause of action, summary judgment will be denied as to Count V.

## CONCLUSION

The entry is:

The Motion for Summary Judgment filed by Defendant Moosehead Mountain Resort is DENIED as to Counts II and III of the Complaint except to the extent that

18

the deed restrictions/conditions in the Release Deed do not include the obligation to maintain, repair or operate the Resort, the resort hotel or the base lodge.

The Motion for Summary Judgment filed by Defendant Moosehead Mountain Resort is DENIED as to Count V of the Complaint.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R. Civ. P. 79(a).

Date: May 7, 2018

William R. Stokes
Justice, Superior Court

19